805 P.2d 477

Don J. SIMPLOT, Plaintiff–Appellant,

v.

WILLIAM C. OWENS, M.D., P.A., an Idaho corporation; William C. Owens, M.D., as Trustee for William C. Owens, M.D., P.A. Pension Plan and William C. Owens, M.D., P.A., Profit Sharing Plan, Defendants–Respondents,

and

Chester D. Howard and Randi D. Howard, husband and wife, Defendants.

No. 17859.

Court of Appeals of Idaho.

Jan. 3, 1990.

Petition for Review Granted Feb. 16, 1990.

Clemons, Cosho & Humphrey, Boise, for plaintiff-appellant. Joseph M. Meier, argued.

Imhoff & Lynch, Boise, for defendants-respondents. Richard A. Cummings, argued.

BURNETT, Judge.

This case presents the saga of a bus, a buyer, a bureaucratic bungle, a secured party and a seller who dropped out of sight. The issues on appeal concern a dispute between the buyer and the secured party. We are asked to decide (1) whether there is a valid security interest in the bus; (2) whether this interest was timely perfected; (3) whether the perfection was later invalidated; and (4) whether, in any event, the buyer acquired the bus free of any security interest as a buyer in the ordinary course of business. The district court resolved all these questions in favor of the secured party. We affirm.

The facts are undisputed. In March, 1985, Dr. William C. Owens, acting as trustee of the pension and profit sharing plans created by his professional corporation, loaned $25,000 to Chester Howard. The loan was evidenced by two promissory notes. To secure the notes, Howard endorsed the certificate of title of his 1956 G.M.C. bus and delivered the certificate to Owens. On August 26, 1985, Howard sold the same bus to Don J. Simplot for $45,000, to be paid in installments. Simplot paid the last installment on January 22, 1986. He then took possession of the bus and received a bill of sale from Howard. The bill of sale recited that the bus was free from all liens and encumbrances. Simplot asked for the certificate of title, but Howard told him it was lost. Simplot requested that the Idaho Department of Transportation conduct a title search. He also applied for a transfer of title. His application was stamped "received" by the Department on May 2, 1986.

Meanwhile, in April, 1986, Owens approached Howard and demanded payment of the loan. No payment was made. On May 5, 1986, Owens applied for a certificate of title showing Howard as the owner and Owens as a lienholder. On May 7, despite the fact that Simplot's application was pending, the Department issued Owens the requested title. On May 20, the Department also issued a certificate of title to Simplot, designating him as the owner and showing no liens or encumbrances. Sometime thereafter, Howard notified Simplot that Owens was claiming a security interest in the bus. At Simplot's request, the Idaho Department of Transportation held a hearing to determine the parties' respective interests. The Department concluded that Simplot owned the bus, but that the title was encumbered by Owens' lien.

Simplot then filed this action, claiming ownership free of liens and seeking an award of damages against Howard. Howard could no longer be found. He was served by publication and a default judgment eventually was entered against him. With respect to the dispute between Simplot and Owens, the district judge upheld the Department's determination that Owens was a lienholder. Simplot has appealed.

## I

■ Simplot first argues that Owens never had a valid security interest in the bus. He contends that the promissory notes given by Howard to Owens did not contain language sufficient to create such an interest.

■ The question is governed by our decision in *Idaho Bank & Trust Co. v. Cargill, Inc.* 105 Idaho 83, 665 P.2d 1093 (Ct.App.1983). There we held that a security interest is not enforceable against the debtor or a third party unless certain requirements are met. An enforceable security interest requires a "security agreement signed by the debtor containing a description of the collateral" if the collateral is not in the possession of the secured party. *Id.* at 87, 665 P.2d at 1097. No particular words are needed to create a security interest; the agreement need not even contain the term "security interest" to be valid. However, there must be language in the instrument which (1) leads to the conclusion that it was the intention of the parties to create a security interest and (2) identifies the collateral. *Id.*

Here, each promissory note contained the words "SECURITY: 1956 GMC Bus." As we have noted, Howard also endorsed his motor vehicle certificate of title to the G.M.C. bus on the line labelled "transfer of title." He then delivered the certificate to Owens. Upon this evidence, we agree with the district court that a valid security interest was intended and created.

## II

■ Simplot next argues that Owens' security interest was not perfected before he purchased the bus from Howard. This argument requires us to determine which statutory scheme—the Vehicle Titles Act or Article Nine of the Uniform Commercial Code—applies to this case. The Legislature has provided that the Idaho Vehicle

Titles Act exclusively governs the perfection of security interests in motor vehicles, unless the vehicles are held in inventory for sale. *See* I.C. §§ 28–9–302(3)(b) and 49–512. Here, the bus was a second-hand vehicle. Nowhere does the record suggest Howard was a used car dealer. Therefore, the bus was not inventory held for sale. The perfection of Owens' security interest was governed by the Vehicle Titles Act.

The Act provides that a security interest in a motor vehicle is perfected upon the filing of an application, with supporting documents and payment of the filing fee, for issuance of a certificate of title showing the secured party as a lienholder. I.C. § 49–510. The Act also provides that the purchaser of a motor vehicle acquires no legal right to the vehicle until a certificate of title is issued to him. I.C. § 49–503. Here, Owens completed the application process on May 5, 1986. Simplot was not issued a certificate of title until May 20. Because Owens perfected his security interest before Simplot acquired any legal right to the bus, the perfection was timely.

We acknowledge that the existence of a timely perfected security interest may be hard for Simplot to accept. After all, he applied for a certificate of title on May 2. It is not his fault that the certificate did not issue until May 20. Neither is it easy to understand why his certificate, when it finally did issue, showed no lienholder. However, these bureaucratic errors do not alter the statutes governing motor vehicle titles and security interests, as applied to this case. The underlying lesson here is that if a buyer, having received no certificate of title from the seller, parts with his money before obtaining a certificate of title from the Department of Transportation, he runs the risk of being unpleasantly surprised at some point by the discovery of by a perfected security interest.

## III

■ Simplot next argues that even if the perfection was timely, it was invalidated when the certificate of title was issued to Owens, naming his corporation as the lienholder and Howard as the owner. Strictly speaking, Owens' corporation was not a party to the security agreement; rather, the secured party was, collectively, the pension and profit-sharing plans, formed by Owens' corporation.

The purpose of listing a lienholder's interests on a certificate of title is similar to the policy behind Article Nine's requirement that financing statements be filed of record. That purpose is to provide inquiry notice to third parties. *See, e.g.,* I.C. § 28–9–402(1) and U.C.C. § 9–402 Official Comment 2. We think the purpose was served here. Simplot has not shown how he was prejudiced by a technical discrepancy in the name of the lienholder on the certificate of title issued to Owens. We hold that the description of the lienholder on the certificate of title was sufficient to place on inquiry notice anyone who saw the certificate or who obtained a title search by the Department. The discrepancy did not invalidate the perfection of the security interest.

## IV

■ Simplot finally contends that even if Owens has a properly perfected security interest, Simplot is protected from that interest, under I.C. § 28–9–307(1), as a buyer in the ordinary course of business. We disagree. As noted above, this case involves the sale of a motor vehicle which was not held in inventory. Consequently, it is governed by the Vehicle Titles Act and not by Article Nine. Idaho Code § 28–9–307(1) does not apply. The Vehicle Titles Act contains no provision extending special protection to buyers in the ordinary course of business.

■ An argument for protection could be made by analogy to Article Nine, but such an argument would founder upon the provision in the Vehicle Titles Act that a buyer acquires no interest in a vehicle until he has been issued a certificate of title. I.C. § 49–503. In *Lux v. Lockridge,* 65 Idaho 639, 150 P.2d 127 (1944), our Supreme Court interpreted this statute to mean that a buyer who had not been issued such a title could not be deemed a bona fide

purchaser for value. In any event, an analogy to Article Nine would be unavailing because a buyer in the ordinary course of business must have purchased the goods from "a person in the business of selling goods of that kind." I.C. § 28-1-201(9). There is no evidence in the record to suggest that Howard was in the business of selling motor vehicles. Therefore, Simplot was not a buyer in the ordinary course of business.

Neither would an analogy to Article Nine be helpful in order to invoke the protection extended by I.C. § 28-9-307(2) to purchasers of consumer goods. This protection exists only if the buyer lacks knowledge of the security interest and the secured party has not filed a financing statement prior to the purchase. Here, of course, Owens did not file a financing statement but he did file the documents required to perfect a security interest in a motor vehicle under the Vehicle Titles Act—and he did so before Simplot acquired a legally cognizable interest in the bus. We conclude that Simplot does not qualify by analogy for the protection of I.C. § 28-9-307(2).

Accordingly, we affirm the district court's judgment upholding the Department's determination that Simplot owns the bus, subject to Owens' lien. Costs to respondent, Owens. Although Owens has requested attorney fees under I.C. § 12-121, we cannot say that this appeal was frivolous, unreasonable or without foundation. Therefore, the parties shall bear their own attorney fees.

WALTERS, C.J., and SWANSTROM, J., concur.