**In re HERITAGE HOUSE INTERIORS, INC., Debtor.**

**Bankruptcy No. 90–5781–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 11, 1990.

Jeffrey W. Warren, Tampa, Fla., for debtor.

Thomas Long, Tampa, Fla., for Pennsylvania House.

ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY, OR IN THE ALTERNATIVE, ADEQUATE PROTECTION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case, and the matter under consideration is a "Motion To Lift

Stay or for the Provision of Adequate Security" [sic], treated as a Motion for Relief from Automatic Stay, or in the Alternative, for Adequate Protection, filed by Pennsylvania House, Inc. (Pennsylvania House, Inc.). The Court has considered the Motion, together with the record and argument of counsel, and finds the undisputed facts relevant to a resolution of this matter to be as follows:

Heritage House Interiors, Inc. (Debtor), is in the business of selling and installing residential and commercial furniture, accessories, and furnishings. In order to obtain inventory, on August 10, 1988, the Debtor and Chicago Pacific Corporation, by and through its division known as Pennsylvania House (Pennsylvania House—Chicago), entered into a Security Agreement and an Accessory Security Agreement (Debtor's Exh. A and B). Through the Security Agreement, Pennsylvania House—Chicago agreed to sell furniture and accessories to the Debtor. In turn, the Debtor granted Pennsylvania House—Chicago a security interest in all furniture and accessories purchased by the Debtor from Pennsylvania House—Chicago, as well as in the proceeds of the collateral noted. The Security Agreement noted in Paragraph 10.1 that the Agreements were "for the benefit of [Pennsylvania House—Chicago], its successors and assigns." However, it should be noted that the "habendum" clause granting Pennsylvania House—Chicago a security interest makes no mention of its successors and assigns.

In connection with the Security Agreements, the Debtor executed a UCC–1 Financing Statement (Debtor's Exh. C) which was filed with the Florida Secretary of State on December 23, 1988. In pertinent part, the Financing Statement noted that the secured party is "Pennsylvania House, a division of Chicago Pacific Corporation, 137 North 10th Street, Lewisburg, PA 17837." Further, the financing statement described Pennsylvania House—Chicago's collateral as "[a]ll inventory of the debtor previously acquired from the secured party, or hereafter acquired from the secured party, specifically including Pennsylvania House furniture and including Pennsylvania House accessories, as well as accounts receivable, chattel paper, and proceeds from sale of such inventory."

On January 26, 1989, Chicago Pacific Corporation merged into Maytag Corporation pursuant to Section 251(c) of the General Corporation Law of the State of Delaware. Pursuant to the Agreement and Plan of Merger entered into between Maytag and Chicago Pacific, Maytag, as the surviving corporation, succeeded by operation of law to all rights and property of Chicago Pacific. (Debtor's Exh. E). It is undisputed that subsequent to the merger, Pennsylvania House, now a division of Maytag (Pennsylvania House—Maytag) remained in the same business location and continued to sell furniture and accessories to the Debtor.

On February 1, 1989, the Debtor executed an Installment Judgment Note (Debtor's Exh. I) in favor of Pennsylvania House—Chicago in the principal amount of $39,624.00. On February 1, 1989, the Debtor and Pennsylvania House—Maytag entered into a Gallery Agreement (Debtor's Exh. F) for inventory financing. On February 1, 1989 and May 25, 1989, the Debtor executed Installment Judgment Notes in the amount of $257,418.00 and $64,514.00, respectively, in favor of Pennsylvania House—Maytag. (Debtor's Exhs. H and K).

On June 1, 1989, LADD Furniture, Inc. (LADD), entered into an Asset Purchase Agreement with Maytag, whereby LADD agreed to purchase the assets of Pennsylvania House—Maytag, excluding "any of [Maytag's] claims or causes of action against third parties relating to the assets, properties, business or operations ... arising out of transactions occurring prior to the closing date." (Debtor's Exh. L). On July 7, 1989, LADD and its wholly owned subsidiary, Pennsylvania House, Inc., entered into an Assignment and Assumption Agreement whereby LADD assigned the interests it would acquire in Pennsylvania House—Maytag to Pennsylvania House, Inc. (Debtor's Exh. M). The same day, Maytag assigned to Pennsylvania House, Inc., the assets of Pennsylvania House—

Maytag. (Debtor's Exh. N). Pennsylvania House, Inc., continued to sell furniture and accessories to the Debtor under the prior agreements entered into between the Debtor and Pennsylvania House—Chicago and Pennsylvania House—Maytag.

On June 12, 1990, the Debtor filed its voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. It is undisputed that at the time of the bankruptcy filing, the Debtor owed Pennsylvania House, Inc., $426,505.78. It is further undisputed that on the date of the bankruptcy filing, the Debtor's inventory included furniture and accessories valued at approximately $195,000.00, which were purchased from either Pennsylvania House—Chicago, Pennsylvania House—Maytag, or Pennsylvania House, Inc.

The final transaction in this complex chain of events occurred on September 7, 1990, when Maytag and LADD assigned "any and all security interests and causes of action" they had against the Debtor to Pennsylvania House, Inc. (Debtor's Exh. O).

It should be noted that despite the transfers of assets between Pennsylvania House—Chicago, Pennsylvania House—Maytag, LADD and Pennsylvania House, Inc., the physical location of the entity doing business with the Debtor has remained the same. Thus, except for the name of the secured party, all the information contained in the UCC–1 Financing Statement continued to be correct.

On July 17, 1990, Pennsylvania House, Inc., filed the Motion presently under consideration, seeking relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) or adequate protection based on its claimed security interest in the Debtor's inventory. In opposition, the Debtor contends that Pennsylvania House, Inc., does not have a security interest in inventory of the Debtor. In the alternative, the Debtor asserts that if Pennsylvania House, Inc., does, in fact, have a security interest in the Debtor's inventory, that interest is unperfected by virtue of the fact that the UCC–1 Financing Statement filed by Pennsylvania House–Chicago is legally insufficient to perfect any interest Pennsylvania House, Inc., may have in the Debtor's inventory. Thus, the Debtor argues that its strong arm powers pursuant to 11 U.S.C. § 544 relegate Pennsylvania House, Inc., to the status of an unsecured creditor, not entitled to either relief from the stay or adequate protection. In support of its agreement, the Debtor relies on 11 U.S.C. § 544(a) which provides in pertinent part as follows:

§ 544. **Trustee as lien creditor and as successor to certain creditors and purchasers**

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists . . . .

Despite the complicated facts surrounding this matter, the narrow question to be resolved by this Court is whether Pennsylvania House, Inc., has a perfected and enforceable security interest in furniture and accessories of the Debtor purchased from Pennsylvania House—Chicago, Pennsylvania House–Maytag, and Pennsylvania House, Inc., and proceeds therefrom, where the UCC–1 Financing Statement filed by Pennsylvania House—Chicago was never amended, and where neither Pennsylvania House—Maytag nor Pennsylvania House, Inc., entered into a new security agreement with the Debtor.

It should be noted at the outset that there is no dispute that Chicago Pacific held a valid and perfected security interest in all inventory sold to the Debtor by Pennsylvania House—Chicago, and the proceeds therefrom. The Security Agreement (Exh. A) is in writing, is signed by the Debtor

and grants a security interest in defined collateral as required by *Fla. Stat.* § 679.203. Likewise, this Court is satisfied that Pennsylvania House—Maytag also had a valid security interest in the Debtor's inventory, by virtue of the corporate merger. As a surviving corporation, Pennsylvania House—Maytag succeeded by operation of law to all rights, privileges, powers and all property and all debts due to Chicago Pacific. *See § 259(a) of the General Corporation Law of Delaware.* By virtue of the merger, Pennsylvania House—Maytag held a security interest in all purchases of inventory by the Debtor from Pennsylvania House—Chicago and from Pennsylvania House—Maytag. Upon Pennsylvania House—Maytag's assignment of its assets to LADD and LADD's assignment of its assets acquired from Pennsylvania House—Maytag to Pennsylvania House, Inc., Pennsylvania House, Inc., acquired a security interest in the Debtor's inventory.

The Debtor contends that it never intended to grant either Pennsylvania House—Maytag or Pennsylvania House, Inc., a security interest in collateral purchased. However, the language of the Security Agreement is clear that the agreement was for the benefit of Pennsylvania House—Chicago's successors and assigns.

■ Having determined that Pennsylvania House, Inc., does have a security interest in the Debtor's inventory, the Court must now determine whether that interest is perfected. If not, the Debtor by virtue of its strong-arm powers provided by 11 U.S.C. § 544, will be able to avoid Pennsylvania House, Inc.'s security interest.

Under § 544(a), the trustee is vested with the status of a lien creditor who extends credit to a debtor at the commencement of a case and at such time receives, in exchange, a judicial lien to secure the loan. *In re Stebow Construction Co., Inc.,* 73 B.R. 459 (Bankr.D.N.J.1987); *In re McGovern Auto Specialty, Inc.,* 51 B.R. 511 (E.D.Pa.1985). No elaborate discussion is needed to support the proposition that a debtor-in-possession has all the rights and powers described in § 544 pursuant to 11 U.S.C. § 1107. Therefore, if a hypothetical

lien creditor could defeat the position of Pennsylvania House, Inc., then so can the Debtor pursuant to 11 U.S.C. § 544. Under *Fla. Stat.* § 679.301, an unperfected security interest is subordinate to the rights of a lien creditor.

■ It should be noted that the postpetition assignment by Maytag and LADD to Pennsylvania House, Inc., of "any and all security interests and causes of action" they had against the Debtor does not change Pennsylvania House, Inc.'s status vis-a-vis the Debtor. The Debtor's avoiding powers under 11 U.S.C. § 544 are determined based on facts existing as of the date of the bankruptcy filing, in this case, June 12, 1990. *Lewis v. Manufacturers National Bank,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961); *In re APC Constr., Inc.,* 112 B.R. 89 (Bankr.Vt.1990); *In re Shelton,* 33 B.R. 377 (M.D.Tenn.1983).

This Court is satisfied that neither Pennsylvania House—Maytag nor Pennsylvania House, Inc., was required to file a subsequent financing statement to perfect its security interest in inventory purchased by the Debtor. *Fla.Stat.* § 679.402(1) provides that

> A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.

In turn, *Fla.Stat.* § 679.105(m) defines a "secured party" as "a lender, seller, or other person in whose favor there is a security interest...." Official Comment 2. to this Section notes that the definition of "secured party" includes an assignee of the original secured party.

To avoid overly technical construction of *Fla.Stat.* § 679.402(1), *Fla.Stat.* § 679.402(7) provides that a "financing statement substantially complying with the requirements of this Section is effective, even though it contains minor errors which are not seriously misleading." This Statute conforms with the underlying policy of

the financing statement filing system, which is to give notice to a subsequent party who is considering taking a security interest in the identically described collateral which is already subject to a security interest. *In the Matter of Glasco, Inc.*, 642 F.2d 793 (5th Cir.1981); *In re Wilco Forest Machinery, Inc.*, 491 F.2d 1041 (5th Cir.1974).

As the name of the debtor, not the secured party is involved in the indexing of financing statements, *see Fla.Stat.* § 679.403(4), the fact that the name of the secured party on the financing statement is not precisely the same as it appears on the Security Agreement will not frustrate the purposes of the filing system. If a subsequent third party searched the records of the Florida Secretary of State, he would discover that an entity known as Pennsylvania House—Chicago has a security interest in the Debtor's inventory. This knowledge would put him on notice to obtain further information, which he could easily receive by writing to Pennsylvania House—Chicago at the address listed on the financing statement. He would then discover the identity of the correct secured party, that is, Pennsylvania House, Inc.

Moreover, based on *Fla.Stat.* § 679.402(2)(e), this Court is satisfied that it was not necessary for Pennsylvania House—Maytag to file an amended or new financing statement after its merger with Pennsylvania House—Chicago. This Statute indicates that after a change in name, identity or corporate structure of the secured party, the secured party need not file a new financing statement to perfect a security interest in subsequent transfers to the Debtor, provided an initially sufficient financing statement has already been filed. Although the new secured party clearly has the option to do so, filing another financing statement is not mandatory pursuant to *Fla.Stat.* § 679.402(2)(e).

The same holds true for Pennsylvania House, Inc. The interests of Pennsylvania House—Maytag were transferred via LADD to Pennsylvania House, Inc., through the assignment described above. *Fla.Stat.* § 679.302(2) provides that "if a secured party assigns a perfected security interest, no filing under this chapter is required in order to continue the perfected status of the security interest against creditors and the transferrees from the original debtor." Official Comment 7 to this Section provides the following example:

> Buyer buys goods from seller who retains a security interest in them which he perfects. Seller assigns a perfected security interest to X. The security interest in X's hands, and without further steps on his part, continues perfected against Buyer's transferrees and creditors.

Further, although *Fla.Stat.* § 679.405 provides a procedure for recording assignments of security interests, the Official Comment to this section notes

> No filing of such an assignment is required as a condition of continuing the perfected status of the security interest against creditors and transferrees of the original debtor.

Filing an amended financing statement after the merger and the assignment obviously would have been a prudent thing to do, however, this Court is satisfied that the financing statement filed by Pennsylvania House—Chicago was sufficient to alert subsequent creditors, including a hypothetical judgment creditor, of the prior security interest of Pennsylvania House, Inc., and protected Pennsylvania House—Maytag's security interests in the Debtor's inventory.

In light of the conclusions set forth above, it is appropriate to schedule a hearing to consider whether Pennsylvania House, Inc., is entitled to an Order lifting the automatic stay or awarding adequate protection. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that a further hearing to consider the lifting of the automatic stay or the award of adequate protection is hereby scheduled before the undersigned in Courtroom A of the United States Bankruptcy Court, 4921 Memorial Highway, Tampa, Florida, on December 28, 1990, at 1:30 p.m.

DONE AND ORDERED.