**In re William FIELD and Constance Field, Debtors.**

**Agricultural Services, Inc., Plaintiff,**

v.

**L.D. Fitzgerald, Trustee, Defendant.**

**Bankruptcy No. 99–40314.
Adversary No. 00–6305.**

United States Bankruptcy Court,
D. Idaho.

June 7, 2001.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

### I. Background.

Plaintiff Agricultural Services, Inc. commenced this adversary against Defendant Chapter 7 Trustee L.D. Fitzgerald on August 24, 2000, alleging it holds an enforceable lien in the cash sale proceeds of two trailers liquidated in this bankruptcy case by Defendant. Defendant denies this allegation and contends Plaintiff failed to properly perfect its interest in the trailers and, as a result, Plaintiff's claims should be treated as unsecured. No trial was held in this matter. Instead, the parties agreed to submit the issues in the action to the Court based on a stipulated record which contains exhibits and a statement of the facts and issues. Docket No. 7. Briefs were filed by the parties and the issues taken under advisement. This memorandum constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

### II. Facts.

On February 4, 1998 Bank of Commerce loaned Debtor William Field $7,605.70. Exhibit A.[1] To secure this loan, Debtor

---

1. Two sets of exhibits were filed with the Court. Docket No. 7. Both sets appear to

granted The Bank of Commerce (sometimes referred to as "the Bank") a security interest in a 1995 Titan flatbed trailer, a 1996 Diamond D horse trailer and 15 head of cattle. Exhibit A. An Idaho motor vehicle title certificate was issued by the Department of Transportation on February 6, 1998, listing the Bank as the first lien holder on the Titan trailer. Exhibit C. On February 9, 1998, a title certificate was issued listing the Bank as the first lien holder on the Diamond D trailer. Exhibit B. Also on February 9, 1998, the Bank caused a UCC–1F to be filed with the Idaho Secretary of State, which designates the Bank as the secured creditor and which describes as collateral 500 beef cattle and calves, and 530 dairy cattle. Exhibit D. There appears to be no dispute by the parties that as a result of this documentation, the Bank held a valid and properly perfected lien in the two trailers and cattle at issue here.

On October 8, 1998, the Bank assigned all its right, title and interest in the promissory note, security agreement and financing statement to Plaintiff. Exhibit F. As consideration for this assignment, the Bank received $8,116.22 from Plaintiff. Exhibit E. Bank of Commerce and Plaintiff sent a notice of assignment to Debtor informing him of the assignment and requesting that all future payments on the debt be made to Plaintiff. Exhibit G. No UCC filing was made to reflect the assignment of the security interest to Plaintiff as to the 15 head of cattle. In addition, Plaintiff took no action to have new motor vehicle title certificates issued reflecting Plaintiff as the first lien holder.

include the same documents, but they are labeled differently. The Court will refer to the exhibits as listed in the parties' statement of facts, Docket No. 7, pages 1–2, Exhibits A–K.

Debtor and his wife filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on March 31, 1999. The two trailers involved in the loan transaction were sold by Defendant at public auction for a total sales price of $7,000; the net proceeds after deduction of costs of advertising and the auctioneer's commission amounted to $6,103.75. While the sale was made free and clear of liens, all valid liens attached to the proceeds. By stipulation of the parties, Defendant has retained the net sales proceeds.

Also following the bankruptcy filing, Plaintiff took possession of four head of Debtors' cattle on or about February 17, 2000. Plaintiff purchased those cattle at a public auction for $100 on October 26, 2000. Exhibit H. With the approval of Defendant, Plaintiff liquidated two cows and two calves on December 8, 2000 for a total sales price of $2030.11.[2] Plaintiff incurred $1,721.75 in costs and expenses in liquidating the cattle and has remained in possession of the sale proceeds since the date of liquidation.

Plaintiff contends that the proceeds from the sale of the cattle are security for, and should be applied to payment of, the debt assigned to Plaintiff by the Bank. Defendant asserts the livestock sale proceeds are property of the bankruptcy estate and must be delivered to Defendant. As to the trailers, Plaintiff contends it has a valid and enforceable lien and is entitled to the net sale proceeds held by Defendant. Defendant asserts Plaintiff did not properly perfect its interests in the two trailers and therefore the proceeds from

2. The record does reflect whether the two cows and two calves were the same four cattle of which Plaintiff took possession, or whether Plaintiff still retains or has previously liquidated two additional cows. Either way it makes no difference to the Court's holding.

the trailers are property of the bankruptcy estate.

## III. Discussion.

### A. Validity of Security Interest in The Cattle.

#### 1. The Pleadings.

■ Fed.R.Civ.P. 8(a)(2), made applicable to adversary proceedings through Fed. R. Bankr.P. 7008(a), requires any pleading which sets forth a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Plaintiff's complaint makes no reference to cattle, and certainly asserts no claims concerning cattle. Defendant's answer includes no counterclaim regarding cattle. There is no language in either pleading from which it could be reasonably inferred that either party seeks relief concerning the cattle. The only discussion indicating one or both of the parties are asserting a right to relief regarding the cattle is found in the statement of facts and the parties' briefing.

On the other hand, neither party has objected to disposition by the Court of any claim regarding cattle, both parties make contentions regarding the cattle, and presumably no prejudice will result if the Court addresses those contentions here. So while the pleadings are technically deficient, in order "to secure the just, speedy, and inexpensive determination" of this action, *see* Fed. R. Bankr.Proc. 1001, the Court will deem the parties' pleadings amended to conform to the proof, *see* Fed. R. Bankr.Proc. 7015, incorporating Fed. R. Civ. Proc. 15(b), and will address the cattle issue.

#### 2. The Cattle.

■ Presumably, Defendant asserts Plaintiff's interest in the cattle and proceeds can be defeated by exercise of De-

fendant's "strong-arm" powers as a hypothetical judgment lien creditor under 11 U.S.C. § 544(a)(1). Under this provision of the Bankruptcy Code, if Plaintiff's security interest is not perfected under state law, Defendant can avoid it. *Fitzgerald v. Bauer Pontiac–Cadillac–Buick–GMC, Inc. (In re Nedrow)*, 95 I.B.C.R. 198, 199, 1995 WL 562160 (Bankr.D.Idaho 1995). Defendant cites Idaho Code § 28–9–405 as supporting his position that Plaintiff holds no enforceable lien in the cattle or sale proceeds because there was no notice of the assignment of the Bank's security interest filed with Idaho Secretary of State. Defendant misreads the statutes. "A secured party *may* assign of record all or part of his rights under a financing statement by filing in the place where the original financing statement was filed of a written statement of assignment . . . ." Idaho Code § 28–9–405(2) (emphasis added). As the Official Comment makes clear

> "[t]his section provides a *permissive* device whereby a secured party who has assigned all or part of his interest may have the assignment noted of record. Note that under Section 28–9–302(2) *no filing of such an assignment is required as a condition of continuing* the perfected status of the security interest against creditors and transferees of the original debtor."

Idaho Code § 28–9–405, Official Comment (emphasis added). In other words, there is no mandatory requirement under Idaho Code § 28–9–405 that an assignee file a notice of an assignment with the Idaho Secretary of State as a condition of perfection. Rather, this section allows secured parties, if they so choose, to note assignments of record so that any relevant inquires regarding the assignee's security interest may be made directly to the assignee. Idaho Code § 28–9–405, Official Comment.

■ Idaho Code § 28–9–302(2) provides "[i]f a secured party assigns a perfected security interest, no filing under this chapter is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor." *See also CIM Intl. v. United States*, 641 F.2d 671, 676 (9th Cir. 1980) ("[Under U.C.C. § 9–302(2) ] it is unnecessary that a subsequent assignee of a recorded interest file the assignment to effect priority over creditors of the original debtor."); *In re Gold Creek Ranch, Inc.*, 86 I.B.C.R. 255, 257 (Bankr.D.Idaho 1986) ("If a secured party assigns a perfected security interest, no filing under Article 9 is required in order to continue the perfected status of the security interest against creditors of the original debtor."). Clearly, Plaintiff was not required to file a UCC–1F or UCC–3F to maintain the perfected secured status of the Bank.[3]

■ There is no allegation that the Bank's security interest in the cattle was unperfected or invalid, and it appears from the record that the Bank did in fact properly perfect its interest in Debtors' cattle. Therefore, as the Bank's assignee, Plaintiff's interest in the cattle trumps Defendant's interest as a hypothetical lien creditor under 11 U.S.C. § 544(a)(1). *See In re Heritage House Interiors, Inc.*, 122 B.R. 605, 608–609 (Bankr.M.D.Fla.1990) (holding debtor-in-possession exercising strong-arm powers could not avoid assignee's security interest in inventory where no rec-

ord of the assignment was filed); 11 U.S.C. § 1107(a) ("debtor in possession shall have all the rights ... and powers ... of a trustee serving under this chapter.").

Under Idaho Code § 28–9–306(1), the cash in the possession of Plaintiff is proceeds from the sale of the cattle; Plaintiff holds an enforceable lien in those identifiable proceeds under Idaho Code § 28–9–306(2), (4)(b) and is entitled to apply the cash to its debt.[4]

### B. The Trailers.

■ While the creation of security interests in vehicles is governed by the Idaho Uniform Commercial Code, perfection of that security interest is governed by the Idaho Motor Vehicle Titles Act. Idaho Code §§ 28–9–302(3)(b); 49–512; *Fitzgerald v. American General Fin., Inc. (In re Psalto)*, 225 B.R. 753, 754 (Bankr.D.Idaho 1998); *Fitzgerald v. First Security Bank of Idaho, N.A. (In re Walker)*, 161 B.R. 484, 488 (Bankr.D.Idaho 1993), *aff'd* 178 B.R. 497 (D.Idaho 1994), *aff'd* 77 F.3d 322 (9th Cir.1996).[5] The trailers involved here are covered by the Idaho Motor Vehicle Titles Act. "The [titling requirements] of this chapter shall apply to every vehicle required to be registered under the provisions of chapter 4, title 49, Idaho Code." Idaho Code § 49–501(1). "Every owner of a motor vehicle, trailer or semi-trailer who intends to operate the vehicle upon any

---

**3.** The example in the Comment illustrating the operation of Idaho Code § 28–9–302(2) is particularly relevant here. "Buyer buys goods from seller who retains a security interest in them which he perfects. Seller assigns the perfected security interest to X. The security interest, in X's hands and without further steps on his part, continues perfected against *Buyer's* transferees and creditors." Idaho Code § 28–9–302(2), Official Comment 7 (emphasis in original).

**4.** In addition, the Court notes that the security agreement executed by Debtor in favor of the Bank expressly included proceeds from the sale of the collateral as part of the security. Exhibit A, p. 3.

**5.** Further, Idaho's Uniform Commercial Code provides that compliance with the motor vehicle statutes is the equivalent to filing a financing statement under Article 9. Idaho Code § 28–9–302(4).

highway in this state shall before the same is so operated, apply to a county assessor and obtain registration . . . ." Idaho Code § 49–401A. Copies of the title certificates for the trailers were provided by the parties to the Court in Exhibits B and C, and as stated above, both certificates note the Bank as the lienholder.

▮ The requirements for perfecting a lien in a vehicle are found in Section 49–510(1) which provides:

> No lien or encumbrance on any vehicle registered under the laws of this state . . . shall be perfected as against creditors or subsequent purchasers or encumbrancers without notice until the holder of the lien or encumbrance, or his successor or assignee, has complied with the requirements of section 49–504, Idaho Code, and has filed the properly completed title application and all required supporting documents with the department or an agent of the department.
>
> . . . .
>
> . . . The title shall contain . . . the name and address of each holder of a lien or encumbrance, and a statement of all liens or encumbrances which have been filed with the department, together with the date of each lien or encumbrance and the date received by the department. . . . All liens and encumbrances so filed with the department shall be perfected and take priority according to the order in which the same are noted upon the certificate of title . . . .

Section 49–504(1) lists the requirements for applications for issuance of certificates of title:

> Application for a certificate of title shall be made on a form furnished by the department and shall contain a full description of the vehicle . . ., a statement

of the applicant's title and any liens or encumbrances on the vehicle and the name and address of the person to whom the certificate of title shall be delivered.

In light of the Idaho statutory requirements concerning perfection of liens in motor vehicles, the Court must determine whether an assignee of a properly perfected security interest must have a new title certificate issued noting the assignee's lien in order to prevail against a bankruptcy trustee. For the reasons discussed below, the Court holds no application or new title certificate is required.

The language of Section 49–510(1) does not expressly require an assignee to apply for issuance of a new certificate of title merely to reflect a change in the name of a lien holder because of an assignment. In fact, unlike Idaho's Uniform Commercial Code, the Motor Vehicle Titles Act is silent concerning assignment of liens.[6] The requirements of Section 49–510(1) to perfect the lien at issue here were met. The Bank applied for and had issued certificates of title noting its liens; Defendant has not asserted any deficiency regarding these liens. No new lien or encumbrance was created when the Bank assigned its lien and right to payment to Plaintiff. An assignment of a right "is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." Restatement (Second) Contracts § 317(1). In this case, as Plaintiff contends, it simply stepped into the shoes of the Bank as to the properly perfected lien in the trailers. Because no "new" lien was created on the trailers by the assignment, Plaintiff need

---

6. Section 49–514 covers transfers of encumbered vehicles by the owner, but does not address transfers of liens on vehicles by creditors.

not comply with the requirements of Idaho Code § 49–510(1).

The scant case law discussing the general purpose of the Motor Vehicle Titles Act supports the Court's reading of Section 49–510(1).[7] In considering former Idaho Code § 49–412, the predecessor of § 49–510, this Court held that regardless of whether the interest a party was claiming in a trailer was a security interest or a lessor's interest, the interest was perfected by notation of the interest on the title certificate. *Swayne v. Evans Equipment Co. (In re Sverdsten Logging, Inc.)*, 86 I.B.C.R. 41 (Bankr.D.Idaho 1986). In that case, the title certificate showed the creditor claimed a lessor's interest in the trailer, and the Court concluded that the title certificate gave proper notice that some interest was claimed in the trailer. *Id.* Therefore, the lease interest did not amount to a secret lien in the property of which subsequent lenders may not be aware. *Id.* at 41–42.

In addressing who was the proper lienholder to list on a certificate of title, a corporation or the corporation's pension and profit-sharing plan, the Idaho Court of Appeals has determined that the purpose of "listing a lienholder's interests on a certificate of title is similar to the policy behind Article Nine's requirement that financing statements be filed of record. That purpose is to provide inquiry notice to third parties." *Simplot v. Owens*, 119 Idaho 271, 805 P.2d 477, 480 (1990) (citing Idaho Code § 28–9–402(1), Idaho Code § 28–9–402 Official Comment 2). Section 28–9–402(1) lists the requirements for a valid financing statement. Official Comment 2 states "[t]his section adopts the system of 'notice filing'.... The notice itself indicates merely that the secured party who has filed may have a security inter-

est in the collateral described. Further inquiry from the parties will be necessary to disclose the complete state of affairs." *See also Sweney v. Cardinal Doors, Inc. (In re Door Supply Ctr., Inc.)*, 3 B.R. 103, 105 (Bankr.D.Idaho 1980) ("The purpose of a financing statement is to give public notice of the type of collateral that may be subject to a security interest ....").

 The purpose of the perfection requirement in the Motor Vehicle Titles Act is clear. Perfection of a lien gives notice to third parties that a creditor may assert a lien in the vehicle. In light of this purpose and the lack of an express statutory requirement that assignees apply for a new certificate of title or otherwise note their lien on a certificate of title, the Court will not imply such a requirement. Upon investigation by a potential creditor or purchaser of a vehicle, the information should be available that the original secured party has assigned its interest.

 The third paragraph of Section 49–510(1) does provide that the title shall contain the name and address of each lienholder. However, when this language is read in context with the entire section and the notice purpose of Section 49–510(1), the Court construes this language to instead create a notation requirement where there are two or more lienholders as to a vehicle. The Court does not interpret this statute to require assignees to apply for a new certificate of title upon the assignment of a lien in a vehicle.

Defendant cites Idaho Code § 49–503 as requiring Plaintiff to note its lien on the trailer titles. That section provides in part: "no person acquiring a vehicle from the owner, whether the owner is a dealer or otherwise, shall acquire any right, title,

---

7. The parties have not cited, nor has the Court through its research been able to lo-

cate, any case discussing assignments of liens in vehicles under the Motor Vehicle Titles Act.

claim or interest in or to the vehicle until he has issued to him a certificate of title for that vehicle . . . ." First, it is clear that Plaintiff did not acquire the "vehicles" from the Bank. Plaintiff acquired a right to payment of the note secured by vehicles. Second, even if the rights Plaintiff acquired from the Bank are covered by this statute, those rights were not acquired from the "owner". As the term is used in Title 49 of the Idaho Code, an "owner" is "a person, other than a lienholder, having the property in or title to a vehicle." Idaho Code §§ 49–116(3), 49–101. Section 49–503 is simply not applicable here.

In summary, the Motor Vehicle Title Act does not expressly require an assignee of a perfected security interest to have its interest noted on a vehicle's title certificate as a condition of enforceability of the interest against third parties. The Idaho Uniform Commercial Code affirmatively excuses the assignee from any "reperfection" requirement for goods covered by a financing statement. In the absence of clear legislative guidance that the policy should be different for titled vehicles, the Court is not inclined to judicially impose such a rule. As the assignee of the perfected security interest in the trailers, Plaintiff is entitled to the cash sale proceeds generated by Defendant's sale of those vehicles.

**IV. Conclusion.**

As to the cattle in question, Idaho's Uniform Commercial Code makes clear that Plaintiff's security interest is valid and enforceable as against the Defendant as trustee without the filing of any notice of the assignment with the Idaho Secretary of State. As to the trailers, there is no requirement in the Idaho Motor Vehicle Titles Act requiring assignments of liens to be noted on a certificate of title. The liens here were properly perfected under Section 49–510(1), and Plaintiff succeeded to this perfected status via the assignment.

A separate form of judgment will be entered.