**In re Neil HERGERT and Marie Hergert, dba Niemar Farms, Debtor.**

**Neil Hergert and Marie Hergert, Plaintiffs,**

v.

**Bank of the West, Defendant.**

**Bankruptcy No. 01–02342.**
**Adversary No. 01–6221.**

United States Bankruptcy Court,
D. Idaho.

Feb. 25, 2002.

D. Blair Clark, Ringert Clark, Boise, Idaho, for plaintiffs.

Kelly Greene McConnell, Givens Pursley, Boise, Idaho, for defendant.

## MEMORANDUM OF DECISION

TERRY MYERS, Bankruptcy Judge.

## I. INTRODUCTION

Chapter 12 debtors Neil and Marie Hergert ("Debtors") filed their petition for relief on August 9, 2001 (the "Petition Date"). They subsequently filed this adversary seeking a declaration that certain security interests of Bank of the West ("Bank") are unperfected, and "that any claim based thereon be deemed unsecured[.]" Complaint to Determine Validity of Lien, Doc. No.1, at p. 2–3. *See also,* Pre–Trial Stipulation, Doc. No. 16, at p. 3, ¶ 11. According to this Stipulation, the issues to be determined by the Court are:

1) At the Petition Date, did the Bank have a perfected security interest in the Debtors' equipment, inventory, chattel paper, accounts, general intangibles and farm equipment?

2) At the Petition Date, did the Bank have a perfected security interest in the Debtors' crops?

3) At the Petition Date, did the Bank have a perfected interest in the Debtors' manufactured home?

*Id.* at p. 3, ¶ 11.

At trial on January 8, 2002, several documents were admitted as exhibits by stipulation. One witness, called by the Bank, was examined. The parties submitted the cause on this basis, and on post-trial briefing simultaneously filed on January 18, 2002.

The Court concludes that the answer to each of the questions posed is "yes." This decision constitutes the Court's findings of fact and conclusions of law. Fed. R.Bankr.P. 7052.

## II. RELEVANT FACTS

The Debtors' farming business was originally financed through Pacific One Bank ("Pacific"). As part of a merger in 1998, all of the assets of Pacific were acquired by the Bank.

These assets included three secured loans of the Debtors: (i) a commercial loan with an outstanding amount of principal, interest and late fees as of trial on January 8, 2002 of $182,051.68; (ii) a commercial loan with an outstanding amount of principal, interest and late fees as of January 8, 2002 of $51,595.44; and (iii) a consumer loan with an outstanding balance of $45,395.12 as of the Petition Date, August 9, 2001.

The two commercial loans are secured under an Agricultural Security Agreement and two Commercial Security Agreements. By their terms, these security agreements cross-collateralize the commercial loan obligations. The consumer loan is secured by an interest in the Debtors' manufactured home.

In connection with the Agricultural Security Agreement, and to perfect the security interest granted thereunder, Pacific filed a UCC–1F (farm products) financing statement. *See* Exhibit H. In connection with the Commercial Security Agreements, and to perfect the security interests described therein, Pacific filed a UCC–1 financing statement, Exhibit G, and obtained notation of its lien on certificates of title to several vehicles. In regard to the consumer loan, Pacific is shown as a lienholder on the certificate of title ("Title") to the Debtors' manufactured home.

Both the UCC–1 and the Title identify the secured party as "Pacific One Bank" with a mailing address of P.O. Box 40108, Portland, Oregon, 97240 (the "Portland Address"). The UCC–1 lists an additional address of P.O. Box 9344, Nampa, Idaho 83652–9344 (the "Nampa Address") as the address to which the Secretary of State should return its "acknowledgment" copy of the filing.

The UCC–1F also identifies "Pacific One Bank" as the secured party, with the Nampa Address shown as the address of the secured party. The Debtors do not dispute that the names and addresses on the UCC–1 and UCC–1F were accurate when the documents were created and filed. *See* Pre-trial Stipulation, at p. 2, ¶ 6.[1]

After origination of the Debtors' loans, and before the chapter 12 filing, Pacific was merged into the Bank. The Bank has never amended the secured party's name or address(es) in any of the above-described documents.

The Bank has maintained and continues to use the Portland Address. The Bank has been receiving mail there since the merger, and today still is, even if the mail is addressed to Pacific.

At some point subsequent to the merger, the Nampa Address expired and the Bank no longer received mail there. This was the situation at the time of Debtors' chapter 12 petition on August 9, 2001. *See* Pre–Trial Stipulation, at p. 3, ¶ 9.

Ann Ybarguen, a special credits representative of the Bank, testified regarding this situation. The Nampa Address was for a post office box within the main building of the Karcher Mall, a retail shopping facility in Nampa, Idaho. Mail sent there after the Nampa Address had expired would be marked as undeliverable. Pacific's old physical address inside the Karcher Mall was also an invalid address. However, at times the local postman would take mail improperly addressed to Pacific's old physical address to the Bank's new physical location, which happened to be on a retail pad in the parking lot of the Karcher Mall. This method of delivery was inconsistent and unpredictable.[2]

## III. ANALYSIS AND DISPOSITION

### A. The consumer loan (manufactured home)

 As explained by this Court in *Agricultural Services, Inc. v. Fitzgerald (In re Field)*, 263 B.R. 323, 329–30, 01.2 I.B.C.R. 69, 71–72 (Bankr.D.Idaho 2001), a security interest in vehicles[3] is perfected under Idaho Code § 49–510(1) by notation of the interest by the Department of Transportation on the title certificate.[4] Chapter 5 of Title 49 of the Idaho Code is silent concerning the effect on perfection when a party acquires the original lienholder's interest through either succession or assignment. This Court held in *Field* that, so long as a new lien is not being created, once a creditor is perfected under I.C. § 49–510(1) it is not necessary for an assignee to reperfect by amending or obtaining a new certificate of title showing its interest. 263 B.R. at 329–30. The Court

---

1. For additional clarity, the Court notes that the Debtors do not dispute the creation of security interests as described in the documents. Pre–Trial Stipulation, at p. 2, ¶ 4. Rather, the Debtors dispute only that the Bank's perfection remained valid at the Petition Date. In turn, this dispute relates solely to the issue regarding the accuracy of the names and addresses shown for the secured party on that date. No other issues concerning the sufficiency of the financing statements on the Petition Date are alleged.

2. After commencement of the chapter 12 case and after the present lawsuit was filed, the Bank applied for the reinstatement of the Nampa [P.O. Box Address]. This October 10, 2001 application was granted by the U.S. Post Office.

3. This includes manufactured homes. *See* I.C. § 49–501(2)(b).

4. Idaho Code § 49–512 states that:

 The method provided in the chapter for perfection of a security interest on a vehicle is exclusive, except as to the security interests in vehicles held in inventory for sale, which shall be governed by the provisions of chapter 9, title 28, Idaho Code.

has not been persuaded that acquiring an interest in a titled vehicle by succession rather than by assignment should yield a different result. The Court concludes that the holding in *Field,* as applied to assignees of a lien, also applies to the Bank as a successor in interest by reason of merger.

The Title, issued on November 17, 1997, lists Pacific as the first (and only) lienholder. The Bank acquired and succeeded to all of Pacific's interest. Thus, the Bank holds a perfected security interest in the Debtors' manufactured home.

## B. The commercial loans

Idaho has repealed Idaho Code Title 28, Chapter 9 ("Old Article 9") and enacted a revised Chapter 9 of that Title ("New Article 9"). New Article 9 became effective on July 1, 2001 (the "Effective Date"). *See* revised I.C. § 28–9–702, compiler's notes.

The parties disagree as to whether Old Article 9 or New Article 9 applies here, and as to the import of each on the questions presented. The Court must first determine whether Old Article 9 or New Article 9 controls.

### 1. Transition from Old Article 9 to New Article 9

The transition from Old Article 9 to New Article 9 is addressed in several sections of the new enactment. The starting point is set out in revised I.C. § 28–9–702(a), which states:

(a) Except as otherwise provided in this part, this act applies to a transaction or lien within its scope, even if the transaction or lien was entered into or created before this act takes effect.

New Article 9 therefore applies to the security interests at issue here. The next question is *how* it applies.

Under revised I.C. § 28–9–703(a), security interests which are perfected as of the Effective Date (July 1, 2001) remain perfected so long as no further action is required under New Article 9. That provision states:

(a) A security interest that is enforceable immediately before this act takes effect and would have priority over the rights of a person that becomes a lien creditor at that time is a perfected security interest under this act if, when this act takes effect, the applicable requirements for enforceability and perfection under this act are satisfied without further action.

*Id.; see also,* revised I.C. § 28–9–703, Official Comment 1.

According to revised I.C. § 28–9–704(3)(A), security interests which are unperfected under Old Article 9 will become automatically perfected if, on the Effective Date, the security agreement and financing statement satisfy the requirements for perfection of the interest under New Article 9. That provision states:

A security interest that is enforceable immediately before this act takes effect but which would be subordinate to the rights of a person that becomes a lien creditor at that time:

. . .

(3) Becomes perfected:

(A) Without further action, when this act takes effect if the applicable requirements for perfection under this act are satisfied before or at that time[.]

*Id.; see also,* revised I.C. § 28–9–704, Official Comment, which explains:

This section [§ 28–9–704] deals with security interests that are enforceable but unperfected (i.e., subordinate to the rights of a person who becomes a lien creditor) under former Article 9 or other applicable law immediately before this Article takes effect. These security in-

terests remain enforceable for one year after the effective date, and thereafter if the appropriate steps for attachment under this Article are taken before the one-year period expires. (This section's treatment of enforceability is the same as that of Section 9–703.) *The security interest becomes a perfected security interest on the effective date if, at that time, the security interest satisfies the requirements for perfection under this Article.*

*Id.* (emphasis supplied).

## 2. The UCC–1

■ Former I.C. § 28–9–402(1) established the basic requirements for an effective financing statement under Old Article 9, providing in part that:

[A] financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.

As stated in former I.C. § 28–9–402(8):

(8) A financing statement substantially complying with the requirements of this section [§ 28–9–402] is effective even though it contains minor errors which are not seriously misleading.

The first alleged defect involves the change in the secured party's name from "Pacific One Bank" to "Bank of the West." The parties have not cited, nor has the Court been able to locate, any Idaho cases finding a name error of the sort involved here to be seriously misleading. However, the Ninth Circuit's interpretation of Montana's UCC Article 9 in *In re Copper King Inn, Inc.*, 918 F.2d 1404 (9th Cir.1990), is helpful. There, the Ninth Circuit held that the accuracy of a secured party's name is relevant only if a hypothetical creditor could somehow be materially led astray by an error in, or omission of, the secured party's name.[5]

Facts or circumstances equivalent to those addressed in *Copper King* were not shown to exist here. Additionally, the Portland Address shown on the UCC–1 remained effective at all material times.[6] The Court concludes that the UCC–1 did not contain any seriously misleading information, whether in regard to the name or the address of the secured party, and it was effective to perfect the security interest in the collateral described therein under Old Article 9.

Under revised I.C. § 28–9–703(a), this perfected status will continue so long as no

---

**5.** In *Copper King*, a financing statement was filed to perfect the security interests of three creditors. The financing statement, however, named only two of the three creditors. The omitted creditor was the entity to whom the debt was actually owed, and that party's arguably collusive relationship with the debtor was such that potential creditors might not have lent money to the debtor had they been aware that their security interests would have been inferior to that of the omitted creditor. *Id.* at 1408.

**6.** In *Wood v. Pillsbury Company (In re Wood)*, 38 B.R. 375, 377 (Bankr.D.Idaho 1983), the Court stated "[t]he function of the financing statement requirement is to give notice of a potential interest in property of a specifically identified debtor as well as a means by which an inquiring party may acquire more detailed information concerning that interest." The Court held that listing the name and address of the secured party as "Utah Power & Light Co. of Rigby, Idaho" was sufficient to meet the requirements of former I.C. § 28–9–402(1), reasoning that "[f]urther information concerning the interest could readily be obtained by an inquiring party based upon this information." *Wood*, 38 B.R. at 378. The Portland Address here led directly to the Bank.

further action is required under New Article 9. It does not appear that further action is needed in order for the UCC–1 to be effective. *See, e.g.,* revised I.C. §§ 28–9–502(a), 28–9–506(a), discussed below.[7] The UCC–1 of record as of the Effective Date meets these requirements of New Article 9 and remains effective. The interests therein identified remain perfected without additional action. This was still the situation as of the Petition Date.

### 3. The UCC–1F

#### a. Old Article 9

Under Old Article 9, additional requirements applied to financing statements for farm products. These were set forth in former I.C. § 28–9–402(9):

(9) A financing statement for farm products is sufficient if it contains the following information:

(a) The name and address of the debtor;

(b) The debtor's signature;

(c) The name, address, and signature of the secured party;

(d) The social security number of the debtor, or in the case of a debtor doing business other than as an individual, the debtor's Internal Revenue Service taxpayer identification number;

(e) A description by category of the farm products subject to the security interest and the amount of such products (where applicable);

(f) A reasonable description of the real estate where the farm products are produced or located. This provision may be satisfied by a description of the

county(ies), and a legal description is not required.

This provision was still subject to former I.C. § 28–9–402(8), set out above, which excused errors which were not seriously misleading.

The UCC–1F was, by the parties' stipulation, fully adequate to perfect the security interest in farm products as of the date of its filing. At that time, there were no errors or deficiencies. However, the UCC–1F later became erroneous in that the Nampa Address at some point was no longer effective. When combined with the change in the secured party's name, the errors became seriously misleading.

Unlike the situation in *Wood,* discussed *supra* at n. 6, a third party here could not have obtained further information concerning the Bank's security interest in the crops referenced in the UCC–1F by attempting to contact the Bank by mail addressed to the Nampa Address. *See* Pretrial Stipulation, at p. 3, ¶ 9. Further, if an inquiring party decided to physically search Nampa after 1998, whether at or near Karcher Mall or otherwise, it apparently would not find "Pacific One Bank" due to the merger with the Bank.

Thus the situation with the UCC–1F is unlike that involving the UCC–1. The name change combined with the defunct Nampa Address could stymie a reasonably diligent inquiring third party.

■ The Court will assume, without deciding, that at some point prior to the Effective Date the Bank's perfected status regarding farm products was questionable.[8] However, the conclusions reached

---

7. *See also,* revised I.C. §§ 28–9–507(b), 28–9–520(c), discussed below.

8. Recall that the parties have stipulated that the UCC–1F was accurate when filed and, thus, the interest in favor of the Bank's predecessor was perfected as of such filing. When

later events rendered the name and address inaccurate, issues might be raised regarding priority, continuation of perfection, and/or the impact of former I.C. § 28–9–402(10) which provided "A financing statement described in subsection (9) [of § 28–9–402] must be

above regarding transition from Old Article 9 to New Article 9 eliminate the need for greater analysis or further scrutiny of the UCC–1F financing statement under Old Article 9. Rather, the Court can simply assume that the interest was unperfected as of the Effective Date. The pertinent question is whether, from and after the Effective Date, the UCC–1F of record was sufficient to perfect the interest under New Article 9. *See* revised I.C. § 28–9–704(3)(A).

### b. New Article 9

To evaluate the effectiveness of the UCC–1F on the Effective Date, reference is first made to revised I.C. § 28–9–502, which establishes the prerequisites for effective financing statements. In pertinent part, it provides:

(a) Subject to subsection (b) of this section, a financing statement is sufficient only if it:

(1) Provides the name of the debtor;

(2) Provides the name of the secured party or a representative of the secured party; and

(3) Indicates the collateral covered by the financing statement.

(b) Except as otherwise provided in section 28–9–501(b), to be sufficient, a financing statement that covers as-extracted collateral or timber to be cut, or which is filed as a fixture filing and covers goods that are or are to become fixtures, must satisfy subsection (a) of this section and also:

(1) Indicate that it covers this type of collateral;

(2) Indicate that it is to be filed in the real property records;

amended in writing within three (3) months, and similarly signed and filed, to reflect any

(3) Provide a description of the real property to which the collateral is related sufficient to give constructive notice of a mortgage under the law of this state if the description were contained in a record of the mortgage of the real property; and

(4) If the debtor does not have an interest of record in the real property, provide the name of a record owner.

. . .

(e) A financing statement covering farm products is sufficient if it contains the following information:

(1) The name and address of the debtor;

(2) The debtor's signature;

(3) The name, address and signature of the secured party;

(4) The social security number of the debtor, or in the case of a debtor doing business other than as an individual, the debtor's internal revenue service taxpayer identification number;

(5) A description by category of the farm products subject to the security interest and the amount of such products, where applicable;

(6) A reasonable description of the real estate where the farm products are produced or located. This provision may be satisfied by a designation of the county or counties, and a legal description is not required.

Under revised I.C. § 28–9–520(a), a filing officer shall refuse to accept a financing statement if it is not in compliance with revised I.C. § 28–9–516(b). Revised I.C. § 28–9–516(b)(4) indicates that a filing officer is entitled to reject a financing statement if it lacks a name or mailing address

material changes."

for the secured party. Revised I.C. § 28–9–516(b)(8) indicates that the filing officer may reject a farm products financing statement if it does not contain all the information specified in revised I.C. § 28–9–502(e) or conform to the official form of the Idaho secretary of state.

However, revised I.C. § 28–9–520(c) protects improper statements so long as they are in fact filed and contain certain essential information. That section states:

> A filed financing statement satisfying section 28–9–502(a) and (b) is effective, even if the filing office is required to refuse to accept it for filing under subsection (a) of this section.

*Id.; see also,* revised I.C. § 28–9–516, Official Comment 9 (Effectiveness of Rejectable but Unrejected Record); revised I.C. § 28–9–520, Official Comment 3 (Consequences of Accepting Rejectable Record).

Note that under revised I.C. § 28–9–520(c), the filed statement need only meet the requirements of subsections (a) and (b) of revised I.C. § 28–9–502 in order to benefit from the protection which actual filing affords. Unlike revised I.C. § 28–9–502(e), those two subsections do not contain a requirement for the secured party's address or signature, only its name. *See* revised I.C. § 28–9–502(a)(2).

### i. Name

The name of the secured party shown on the UCC–1F on the Effective Date was Pacific, not the Bank. To determine whether this is sufficient identification of the secured party, the Court looks to several provisions of New Article 9.

First, revised I.C. § 28–9–506 provides in part:

> (a) A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.
>
> (b) Except as otherwise provided in subsection (c) of this section, a financing statement that fails to sufficiently provide the name of the debtor in accordance with section 28–9–503(a) is seriously misleading.

Subsection (b) makes a failure to sufficiently provide the name of the debtor a seriously misleading error. Negative inference would indicate that an error in the name of the secured party is not of the same magnitude. At a minimum, it is not automatically or *per se* seriously misleading.

Second, Official Comment 2 to revised I.C. § 28–9–506 states, in part:

> In addition to requiring the debtor's name and an indication of the collateral, Section 9–502(a) requires a financing statement to provide the name of the secured party or a representative of the secured party. Inasmuch as searches are not conducted under the secured party's name, and no filing is needed to continue the perfected status of a security interest after it is assigned, an error in the name of the secured party or its representative will not be seriously misleading. However, in an appropriate case, an error of this kind may give rise to an estoppel in favor of a particular holder of a conflicting claim to the collateral. See Section 1–103.

*Id.*[9]

Third, revised I.C. § 28–9–511 indicates that the secured party identified in the

---

9. However, to give rise to such an estoppel, the name error would have to actually result "in prejudice to a particular searcher that reasonably relied to its detriment on the error and would be harmed unfairly if the filer who committed the error were allowed to assert its priority." Harry C. Sigman, *Twenty Questions About Filing Under Revised Article 9:*

financing statement is the "secured party of record" and will remain such until the situation is altered by amendment. Official Comment 3 to revised I.C. § 28–9–511 recognizes:

Application of other law may result in a person succeeding to the powers of a secured party of record. For example, if the secured party of record (A) merges into another corporation (B) and the other corporation (B) survives, other law may provide that B has all of A's powers. In that case, B is authorized to take all actions under this Part that A would have been authorized to take. Similarly, acts taken by a person who is authorized under generally applicable principles of agency to act on behalf of the secured party of record are effective under this Part.

While amendments of financing statements can be made, *see* revised I.C. §§ 28–9–511, 28–9–512, nothing in those sections appears to indicate that they must be made. It is particularly relevant here that revised I.C. § 28–9–511 does not require an amendment of the financing statement to reflect a succession in interest such as by merger, but instead addresses the question as one of the actor's authority.

#### ii. Address

Closely related to questions under New Article 9 regarding the name of the secured party are questions of that party's address. New Article 9 recognizes that a limited function is served by the inclusion on the financing statement of the secured party's address; it only indicates a place to which others can send any required notifications. *See* revised I.C. § 28–9–516, Official Comment 5:

*The Rules of the Game,* 74 Chi.–Kent L.Rev. 861, 866 (1999) (addressing UCC § 9–506, Official Comment 2).

5. Address for Secured Party of Record. Under subsection (b)(4) and Section 9–520(a), the lack of a mailing address for the secured party of record requires the filing office to reject an initial financing statement. The failure to include an address for the secured party of record no longer renders a financing statement ineffective. See Section 502(a). The function of the address is not to identify the secured party of record but rather to provide an address to which others can send required notifications, e.g., of a purchase money security interest in inventory or of the disposition of collateral. Inasmuch as the address shown on a filed financing statement is "an address that is reasonable under the circumstances," a person required to send a notification to the secured party may satisfy the requirement by sending a notification to that address, even if the address is or becomes incorrect. See Section 9–102 (definition of "send"). Similarly, because the address is "held out by [the secured party] as the place for receipt of such communications [i.e., communications relating to security interests]," the secured party is deemed to have received a notification delivered to that address. See Section 1–201(26).

For all these reasons, the errors in name or address on the UCC–1F cannot be viewed as rendering the filing of that statement ineffective to perfect the security interest in farm products as of the Effective Date. The structure of New Article 9 makes the absence of a name or address grounds for the filing officer to reject the statement, but if accepted for filing it will be effective.[10] Errors in the

10. Additionally, revised I.C. § 28–9–507(b) states that:

(b) Except as otherwise provided in subsection (c) of this section and section 28–9–508, a

secured party's name or address as shown are, by virtue of the structure of New Article 9, not seriously misleading, and do not vitiate the effectiveness of the filing.[11]

■ Lastly, in order to move from the status of the UCC–1F as of the Effective Date to its status as of the Petition Date, the Court must address revised I.C. § 28–9–502(f). This section provides:

> (f) A financing statement described in subsection (e) of this section must be amended in writing within three (3) months, and similarly signed and filed, to reflect any material changes. In the event such form is not incorporated within the financing statement, the effectiveness and continuation of that form is to be treated as if it were a part of the financing statement with which it is filed.

This continues the approach taken in former I.C. § 28–9–402(10).[12]

Because this is a provision not found in the model revised Article 9, there is no explanation in the Comments as to its anticipated operation, nor any cross-reference to the other provisions of New Article 9. For example, as the Court has set out above, revised I.C. §§ 28–9–502, 28–9–507, 28–9–516, and 28–9–520 all speak to the consequences of errors in financing statements, either at inception or arising later as once correct information has turned incorrect. Errors in name and address of the sort at issue here are not fatal to perfection.

Notwithstanding the operation of these several provisions, should the merger of Pacific into Bank and the resultant change of name, and the loss of use of the Nampa Address, be viewed as "material changes" requiring amendment? If so, what is the consequence of a failure to amend?

The Court need not resolve these questions in this case. Here the effect of the recorded UCC–1F is measured, pursuant to revised § 28–9–704(3)(A), on the Effective Date of July 1, 2001. That financing statement was sufficient to perfect the farm products security interest on that date. If revised I.C. § 28–9–502(f) required amendment due to "material change" which arguably impacted the effectiveness of the statement *after* July 1, 2001, the Bank had 3 months from that date to do so. The bankruptcy petition was filed on August 9, 2001. The 3–month period of § 28–9–502(f) had yet to run. Therefore, when evaluating whether the Bank was perfected on the Petition Date— the precise question posed by the litigants—the answer is still yes.

The Court therefore concludes that the UCC–1F financing statement was effective as of the petition date under New Article 9

financing statement is not rendered ineffective if, after the financing statement is filed, the information provided in the financing statement becomes seriously misleading under section 28–9–506.

As Official Comment 4 to revised I.C. § 28–9–507 makes clear, post-filing changes that render a financing statement inaccurate—and even seriously misleading—do not render that financing statement ineffective.

11. *See also Sigman, supra,* at 868: "The secured party's address is not an element of sufficiency under [revised] Section 9–502[(a)(2)]. Failure to provide an address for the secured party is a ground for rejection under [revised] Section 9–516(b)(4), but if the financing statement is nevertheless accepted by the filing office, it is effective. Since a filed financing statement that lacks a secured party address would be effective, a filed financing statement with an erroneous address or an address that was correct when filed but is no longer correct must surely remain effective."

12. The Court has been unable to locate any reported authority related to this former provision.

to perfect Bank's security interest in farm products as described therein.

## IV. CONCLUSION

The Effective Date of New Article 9 was July 1, 2001. This preceded the filing of the Debtors' chapter 12 petition on August 9, 2001. On the date this bankruptcy case commenced, both the UCC–1 and UCC–1F financing statements of record were sufficient to perfect the security interests granted the Bank.

Based upon the foregoing, the Court finds and concludes that the Bank has a valid, perfected security interest in the property described in the UCC–1 and in the UCC–1F, and in the manufactured home shown on the Title. These are the sole questions posed by the parties' pleadings and stipulations. Counsel for the Bank shall prepare a form of Judgment consistent with this Decision.