**In re Sam STOUT, Debra Stout, Debtors.**

No. 02–12609.

United States Bankruptcy Court, D. Kansas.

Oct. 22, 2002.

Dan W. Forker, Jr., Reynolds, Forker, Berkley, Suter, Rose & Graber, Hutchinson, KS, for debtors.

*ORDER ON MOTION OF DEBTORS TO DETERMINE SECURED STATUS OF FIRST NATIONAL BANK OF STERLING IN GROWING CROPS*

ROBERT E. NUGENT, Bankruptcy Judge.

Sam and Debra Stout ("Debtors") seek a determination of the secured status of the First National Bank of Sterling, Kansas ("Bank") in certain growing crops. Debtors and the Bank stipulate that the Bank holds signed security agreements in which the debtors purport to grant a security interest in their growing crops. These security agreements were executed and delivered to the Bank prior to July 1, 2001, the effective date of revised Article 9 of the Kansas Uniform Commercial Code. The security agreements do not contain legal descriptions of the land on which the allegedly attached crops grow. The Bank did, prior to debtors' filing their chapter 12

petition, file financing statements which would perfect an enforceable security interest in crops.

The parties have stipulated to the following facts and asked the Court to rule. At the time of debtors' bankruptcy filing, June 4, 2002, debtors had growing 918 acres of wheat, 367 acres of dry land corn, 244 acres of irrigated corn, and 123 acres of milo. They owed the Bank not less than $891,161.39, said debt being secured by various mortgages and security agreements. Two of those security agreements concern growing crops, one executed on February 26, 1993 and the other executed May 2, 2000. The parties agree that neither of these security agreements complied with former Kan. Stat. Ann. § 84–9–203 (1996) for attachment, because they lacked descriptions of the land on which the crops were growing. They further agree that the security interest of the Bank did not attach to the growing crops.

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This contested matter is a core proceeding. 28 U.S.C. § 157(b)(2)(K).

■ At issue here is whether a security interest which did not attach prior to the enactment of revised Article 9 can be "saved" by that enactment. The parties agree and there is no question that absent the revised Code's enactment, the Bank's security interest would not be enforceable against either the debtors or third parties. Former Kan. Stat. Ann. § 84–9–203 provided that "a security interest is not enforceable against the debtor or third parties with respect to the collateral and *does not attach* unless ..." three specific conditions were met. Kan. Stat. Ann. § 84–9–203(1) (1996). The three conditions were: (1) the debtor signing a security agreement which adequately described the collateral; (2) value having been given; and (3) the debtor having rights in the collater-

al. In the case of a security agreement dealing with crops growing or to be grown, the security agreement must contain a description of the land on which they are grown. Kan. Stat. Ann. § 84–9–203(1)(a) (1996). In the Stouts' case, the security agreements lack any description of the land on which their crops grow. Thus, under the old law, the Bank's security interest never attached to the crops at all.

On July 1, 2001, revised Article 9 took effect in Kansas. Under the new law, a legal description of crop land is no longer required for a security agreement covering crops. The new version of § 9–203 provides that a "security interest attaches to collateral when it becomes enforceable against the debtor with respect to collateral, unless an agreement expressly postpones the time of attachment." Kan. Stat. Ann. § 84–9–203(a) (Supp.2001). A security agreement becomes enforceable (thus triggering attachment) when (1) value has been given; (2) the debtor acquires rights in the collateral; and (3) for our purposes, the debtor has authenticated a security agreement providing a description of the collateral. The requirement that crop land be described has been dropped. Kan. Stat. Ann. § 84–9–203(b)(1)—(3)(A) (Supp. 2001). Had the Bank's security agreements been signed after July 1, 2001, they would suffice to attach the debtors' crops and, unless the security interest was somehow avoidable under Chapter 5 of the Bankruptcy Code, the subsequent bankruptcy filing would not affect the validity or perfection of the liens created thereby.

The Bank asserts that with the enactment of revised Article 9, the infirmities of the security agreements have been cured by the change of law and that the crop liens should be deemed to attach and, therefore, be valid and perfected as against the debtors and the bankruptcy estate. Finding virtually no scholarship or

case law on this point (and being cited none), the Court is left to a careful study of the statutory language, and, in particular, the transitional rules found in Part 7 of Article 9, KAN. STAT. ANN. § 84–9–701 (Supp.2001), et seq.[1]

When the debtors filed this case on June 4, 2002, they became debtors in possession of the assets of the estate which included the proceeds of the crops growing as of July 1, 2001. 11 U.S.C. § 1203. As such, the debtors stand in the position of a chapter 11 trustee and, as debtors in possession, they are lien creditors under the Kansas Uniform Commercial Code. KAN. STAT. ANN. § 84–9–102(52)(C) (Supp.2001). If the Bank's security agreements were valid and enforceable as of the effective date of revised § 84–9–203, the Bank's interests would take priority over those of a lien creditor. A lien creditor that acquires its interest in the collateral before a security interest becomes perfected takes priority over the secured party. KAN. STAT. ANN. § 84–9–317(a)(2). The debtors did not acquire their lien creditor status until June 4, 2002, well after the effective date of the Article 9 revision (July 1, 2001), which is arguably the earliest that the Bank's liens could have attached to the crops. The only remaining question, then, is whether the liens were "saved" and attached upon the enactment of revised § 84–9–203.

The Bank's best argument might be found in KAN. STAT. ANN. § 84–9–702(a) (Supp.2001) which proclaims that "this act applies to a transaction or lien within its scope, even if the transaction or lien was entered into or created before this act takes effect." The Official Comment to this section holds that "secured transactions entered into under former Article Nine must be terminated, completed, consummated and enforced under this Article." KAN. STAT. ANN. § 84–9–702(a) (Supp. 2001), Official Comment 1. Section 9–702 contains a further provision that valid transactions not previously governed by Article 9 remain valid under the revised law and may be enforced either under revised Article 9 or under the law that would otherwise have applied without revised Article 9's enactment. KAN. STAT. ANN. § 84–9–702(b) (Supp.2001). Of course, this latter provision would not cover the transactions before this Court because crop financing clearly lay within the scope of former Article 9. The latter provision's inclusion is telling, however, in that it amply provides for the numerous classes of transactions which were formerly beyond the scope of Article 9, but makes no provision whatever for the curing of faulty pre-enactment Article 9 transactions. These provisions are found in KAN. STAT. ANN. § 84–9–703 and 704 (Supp.2001).

■ Were KAN. STAT. ANN. § 84–9–702(a) (Supp.2001) the beginning and the end of the transition rules, the Bank's position would at least be supportable. Application of the revised statute to the security agreements in this case might render them enforceable and therefore valid. Unfortunately for the Bank, the other transition rules suggest that, while faulty pre-enactment perfection is remediable, failed pre-enactment attachment is not. The drafters of the revised law did not directly address this topic and this omission, in this Court's view, seals the Bank's fate.

Authors White and Summers make a passing reference to the transition rules in their Uniform Commercial Code treatise, stating that "sections 9–701 through 9–708

---

1. There appears to be only one reported case interpreting § 9–704, *In re Hergert,* 275 B.R. 58 (Bankr.Idaho 2002). It relates to pre- and post-enactment perfection issues and is not helpful here.

cover almost every permutation that an imaginative mind could think of: cases where the security agreement would be invalid under the old law but valid under the new and where the converse is true; cases where the old filing was valid but a filing at that location would be invalid under the new and the converse." 4 JAMES J. WHITE AND ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 31–16 (5th ed.2002). The permutations most relevant to this case are found in §§ 9–703 and 704.

KAN. STAT. ANN. § 84–9–703 (Supp.2001) first provides that:

> (a) **Continuing priority over lien creditor: perfection requirements satisfied.** A security interest *that is enforceable immediately before this act takes effect* and would have priority over the rights of a person that becomes a lien creditor at that time is a perfected security interest under this act if, when this act takes effect, the applicable requirements for enforceability and perfection under this act are satisfied without further action.

(Emphasis added). Here, the security interest in question was not enforceable immediately before the act took effect.

A second permutation is also found in § 9–703, that of the security interest which is enforceable under the old law, but not under the new. Under § 84–9–703(b), a grace period of one year is accorded to the holder of such an security interest during which time the secured party must meet the applicable enforceability and perfection requirements in order to preserve the security interest's priority over a lien creditor. This provision is also not applicable to the matter at hand.

Section 9–704 refers to a third permutation, that of the pre-enactment enforceable, but unperfected, security interest. It provides:

> A security interest *that is enforceable immediately before this act takes effect* but which would be subordinate to the rights of a person that becomes a lien creditor at that time:
>
> (1) *Remains an enforceable security interest* for one year after this act takes effect;
>
> (2) remains enforceable thereafter if the security interest becomes enforceable under K.S.A.2001 Supp. 84–9–203 and amendments thereto, when this act takes effect or within one year thereafter; and
>
> (3) becomes perfected:
>
> (A) Without further action, when this act takes effect if the applicable requirements for perfection under this act are satisfied before or at that time; or
>
> (B) when the applicable requirements for perfection are satisfied if the requirements are satisfied after that time.

KAN. STAT. ANN. § 84–9–704 (Supp. 2001) (emphasis added).

Summarizing, the transition rules refer to three permutations: (1) a security interest that is enforceable pre-enactment and post-enactment (§ 84–9–703(a)); (2) a security interest that is enforceable pre-enactment but not enforceable post-enactment (§ 84–9–703(b)); and (3) a security interest that is enforceable pre-enactment but is unperfected pre-enactment (§ 84–9–704). There appears to be no reference to a fourth permutation, a security interest that is not enforceable pre-enactment. Plainly, pre-enactment enforceability is a prerequisite to the relief accorded by either transition rule. These specific rules trump the general rule of § 84–9–702(a) which draws all pre-enactment liens under the revised Article's mantle. Section 9–702's inclusion of language dealing with transactions formerly outside of Article 9, taken with the exclusion of *any* language

515

supporting the validity of transactions which were unenforceable pre-enactment, indicates that the drafters of the uniform law and the Kansas legislature did not intend to cure defective pre-enactment attachments by the enactment of the revision.

Because the Bank's pre-enactment security interest did not describe the lands on which the debtors' crops were growing, it did not attach the crops under KAN. STAT. ANN. § 84–9–203 (1996) and was not "enforceable" as to the crops or their proceeds. Because it was unenforceable before the enactment of revised Article 9 in Kansas, it is unenforceable now. None of the transition rules addresses or cures the pre-enactment failure to attach. The estate's interest in the proceeds of the crops planted prepetition is therefore free and clear of any lien or claim of the First National Bank of Sterling, Kansas and the debtors' motion is accordingly GRANTED.

IT IS SO ORDERED.