**JANNEY et al. v. BELL.**

**In re BUCHANAN.**

No. 4589.

Circuit Court of Appeals, Fourth Circuit.

April 10, 1940.

Alvin T. Embrey, of Fredericksburg, Va., for appellants.

T. Stokeley Coleman, of Spotsylvania, Va., for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This statement of the facts in this case is taken from the opinion of the Trial Judge:

"On April 8, 1937, Buchanan (sometimes hereinafter called the bankrupt) then of and doing business in Fredericksburg, Virginia, executed to Alvin T. Embrey, Trustee (sometimes hereinafter called the deed-trustee) a *Deed of Trust on certain motor vehicles* and personal property, which Trust was *recorded on the same day in the Clerk's Office of the Corporation Court of Fredericksburg,* Virginia, in Miscellaneous Lien Book, and which Trust *secured the payment of a note of* $1,500, now reduced by curtails to the sum of $832.50, and held by S. M. Janney, who acquired the same for its full value prior to maturity—said Deed of Trust was not recorded or registered in the office of the Division of Motor Vehicles of Virginia. In April, 1939, Buchanan being in default, said Janney directed Alvin T. Embrey, Trustee, to advertise said property for sale under the provisions of said Deed of Trust, and said Embrey took up the matter with Buchanan, who voluntarily surrendered possession and control of the property to said Embrey, Trustee, on April 22, 1939. Embrey, Trustee, on April 17, 1939, had advertised the property for sale under the terms of the Deed of Trust— the sale to be held on May 20, 1939.

"Following the delivery of the property to Embrey, Trustee, on April 22, 1939, said Trustee, pending sale, had the property stored in a garage in Fredericksburg subject alone to the order of said Trustee, and at the rental charge of the Trustee of $10.00 per month for storage.

"On May 2, 1939, Buchanan filed his Petition in Bankruptcy; was adjudged a bankrupt on the same day, and E. C. Bell, Jr. (sometimes hereinafter called the bankrupt trustee), was appointed Trustee for the Bankruptcy Estate. Following the filing of the Petition, Embrey, Trustee, in conference, agreed to postpone the Trust sale until questions could be decided, and which questions were afterwards raised by the Trustee in Bankruptcy, who filed his Petition on July 7, 1939, reciting the above facts with an allegation that said Deed of Trust was never properly recorded and that Embrey, Trustee, wrongfully held possession of said property from the Trustee in Bankruptcy. Appellants answered the petition; asserted the validity of the lien, and prayed that the property be abandoned by the Trustee in Bankruptcy since there was no equity therein for general creditors.

"The Referee directed the property to be appraised, and the Appraisers returned a value of $525.00. The Referee determined that the Deed of Trust had not been recorded in the office of the Motor Vehicle Department of Virginia, pursuant to Section 2154(74) of the Code of Virginia, and not being so recorded, held that it did not constitute a valid lien.

"On appeal to the District Court, the parties filed an agreed statement of facts, and after argument, the District Court affirmed the ruling of the Referee and on October 30, 1939, entered the order appealed from. Following the decision of the District Court, by agreement of parties, an order was entered by the Referee directing a sale of the property without prejudice to the rights of the parties, and transferring the controversy to the funds and on the sale of the property, it brought $552.00."

This case thus presents a single problem: whether the claim of the deed-trustee, who had taken over the motor vehicles in question preparatory to a sale of them, is prior to the claim of the bankrupt-trustee. This may be broken down into two questions: (1) Whether, under the Virginia law, a chattel mortgage of a motor vehicle is good as between the parties without such registration of the claim as is required by the Virginia Motor Vehicles Act; (2) whether, if this question be answered in the affirmative, the Federal Bankruptcy Act gives priority as to these motor vehicles to the bankrupt-trustee over the deed-trustee. Of course, if the chattel mortgage be void as between the parties because of lack of statutory registration, then all title to and interest in the motor vehicles would remain in the bankrupt and accordingly would pass to the trustee.

The general law is pretty well settled that, apart from statutory restrictions, an unrecorded chattel mortgage is good as between the parties. See 11 C.J. 511 and cases cited. Under the Virginia law, which we must apply, it seems that apart from recordation statutes, the trustee in the deed of trust of personalty acquires a defeasible legal title. Sulphur Mines Co. v. Thompson, 93 Va. 293, 25 S.E. 232. It seems further that a

trustee in a deed of trust given to secure a debt and the creditors secured occupy the high position of purchasers for value within the general meaning of registration laws, Rhea et al. v. Preston, 75 Va. 757, and see also Lawyer v. Bark, 45 W. Va. 468, 470, 31 S.E. 964. It does not seem necessary here to discuss, as to the Virginia situation, the title theory and the lien theory of chattel mortgages. See Glenn, Fraudulent Conveyances and Preferences, Rev.Ed., Sections 497-499.

■ It might be remarked in this connection that, since under the general law an unrecorded chattel mortgage is good as between the parties and registration statutes under their general philosophy are enacted for the benefit of third parties, the chattel mortgage should be good as between the parties unless the recordation statute either expressly declares the mortgage void as between the parties or indicates such invalidity of the chattel mortgage by necessary intendment or very clear implication.

The Virginia Motor Vehicle Act (Sec. 2154(48) et seq.) is quite long, very complicated and leaves much to be desired from the standpoint of clearness in legislative draftsmanship. In some of its provisions as to the recordation of claims to motor vehicles, it does use language which would indicate that its recordation provisions are mandatory and therefore must be complied with in order that title or any other claim may have validity even as between the parties; but, on the other hand, there are many other provisions in which the draftsman of the recordation portions of the Act used the language of other recordation statutes, so that this language, if taken by itself, would indicate even more clearly that such provisions applied only to third persons and that an unrecorded claim would be quite valid between the parties. Neither the investigations of counsel nor my own independent searches have revealed any Virginia case which is directly in point. The question is close and is of no small practical importance.

■ If an unregistered chattel mortgage of motor vehicles in Virginia be void as between the parties, some rather strange results would seem to follow. Then, it would seem, the owner of a motor vehicle, after mortgaging it to secure a loan, could blandly repudiate the mortgage and re-claim the motor vehicle without paying the debt secured by the mortgage, even though no rights of creditors are involved. It would seem, too, that he could pledge the car for a loan (and a chattel mortgage becomes an effective pledge when, as here, the mortgagee takes possession of the mortgaged property) and, again without paying the debt, even though no rights of creditors are involved, could take the car back from the pledgee. Such results would seem to militate in favor of the view which we take, that in Virginia an unrecorded chattel mortgage of a motor vehicle is good as between the parties.

■ Various states of the United States have adopted Motor Vehicle Codes containing registration provisions. A majority of the courts in these states have adopted the view that these statutes did not completely over-ride the common law, and that transactions in such vehicles, which were hitherto valid under the general law, still remain valid as between parties. Commercial Credit Co. v. McNelly, 1934, 36 W.W.Harr., Del., 88, 171 A. 446; Commercial Credit Co. v. Schreyer, 120 Ohio St. 568, 166 N.E. 808, 63 A.L.R. 674; Moore v. Wilson, 230 Ky. 49, 18 S. W.2d 873; Williams v. Stringfield, 76 Colo. 343, 231 P. 658; Bond Lumber Co. v. Timmons, 82 Mont. 497, 267 P. 802; Carolina Discount Corp. v. Motor Co., 190 N.C. 157, 129 S.E. 414; Hartford Ins. Co. v. Knight, 146 Miss. 862, 111 So. 748; Cerex Co. v. Peterson, 203 Iowa 355, 212 N.W. 890; Chucovich v. Securities Corp., 60 Cal.App. 700, 214 P. 263; Hennessy v. Ins. Ass'n, Tex.Com.App., 282 S.W. 791, 46 A.L.R. 521; Jackson v. James, Utah, 89 P.2d 235. Some of the state courts, however, appear to have taken an opposite view. Endres v. Mara-Rickenbacker Co., 243 Mich. 5, 219 N.W. 719; Muzenick v. McCain, 220 Mo.App. 502, 274 S.W. 888; Merchants' Securities Corp. v. Lane, 106 N.J.L. 576, 150 A. 559. See, also, Fairbanks Steam Shovel Co. v. Wills, 240 U. S. 642, 36 S.Ct. 466, 60 L.Ed. 841. These cases have value, though it is believed that in no single instance was the state statute in question even approximately identical with the Virginia statute.

Now as to the Virginia cases which were relied on and discussed at length by counsel in the argument of this case. In Thomas v. Mullins, 153 Va. 383, 149 S.E. 494, 496, the Supreme Court of Appeals of Virginia did use very strong language in insisting on strict compliance with the

registration provisions of the Virginia Motor Vehicle Act:

"The statute under consideration [Registration Act], while providing incidentally for the payment of certain fees, is not primarily a revenue raising measure. As interpreted and construed by the Legislature its general purpose is to make uniform the law of this state in so far as it affects the regulation of motor vehicles; the issuance of certificates of title to prevent larceny thereof * * *.

"In view of the mandatory requirements of the statute * * *; that the purchaser or owner must make proper application upon the form furnished by the department; that the department, when satisfied of the regularity of the transfer, must register such automobile and the name of the owner thereof in a suitable book; and must issue to the owner thereof a certificate of title—we are of opinion that, unless these requirements are fully complied with, the delinquent party does not fall within the beneficial provisions of the statute. A noncompliance with the statute subjects the seller to fine and imprisonment and defeats the recovery based upon a contract obnoxious to the statutory requirements. The imposition of the penalty is to protect the public against fraud and to compel the proper registration of titles. * * *

"The statute is essentially a police regulation, enacted primarily for the protection of the public, and its provisions are mandatory in their terms."

In that case the Court appeared to hold (even as to specific goods in a deliverable state when the parties clearly intended title to pass) that a contract of sale remains executory and that title does not pass from the seller to the buyer when the recordation provisions of the Virginia Act are not fulfilled. It might be remarked that this was a rather hard case. The buyer sued to recover the purchase price. The automobile in question had been destroyed by fire, apparently without the fault of either party, while in the possession of the seller, and the buyer had already conveyed to the seller certain land as consideration for the contract of sale of the automobile.

Sauls v. Andrews, 163 Va. 407, 175 S.E. 760, 763, followed Thomas v. Mullins, supra, without much discussion of the problem involved. In the Sauls case, there had been an exchange or swap of cars, with a retention of title to the car in question in the transferor until the payment to the transferor by the transferee of the excess price; possession of this car was given to the transferee, but the car remained registered in the transferor's name, and the transferor paid the taxes on it. There was no statutory recordation of this retention of title in the transferor. A creditor of the transferee who had a judgment against the transferee under an execution issued upon this judgment, levied upon the car while it was in the transferee's possession. The Virginia Court did not discuss any question of estoppel here but said that the case was controlled by Thomas v. Mullins, supra, that without recordation of the transfer of title to the transferee, no title (legal or equitable) passed to the transferee and that therefore title was still in the transferor and this title of the transferor prevailed over the claim of the seizing creditor of the transferee. In the opinion, the Court said: "The mobile character of property of this kind makes registration of title and uniformity of registration doubly important. * * * These statutes governing registration are essentially police regulations, and must be observed."

In Maryland Credit Finance Corp. v. Franklin Credit Finance Corp., 164 Va. 579, 180 S.E. 408, the facts of that case were thus stated by the Court:

"On the 18th of October, 1933, Webb purchased the truck in question and made application to appellant to finance the purchase thereof in the sum of $1,020. On the same date Webb made application to the Division of Motor Vehicles of the state for a certificate of title covering the truck, and set forth in the application that he was indebted to appellant in the above-named sum. On November 1, 1933, there was issued to Webb by the division of motor vehicles a certificate of title for the truck, which failed to show a lien thereon in favor of appellant. License tags were issued to Webb and the truck put into use. Subsequently the Division of Motor Vehicles recalled the title issued and on the 9th day of November, 1933, a certificate of title was issued showing a lien in favor of appellant.

"After the purchase of the truck by Webb on October 18, to wit, on the 25th day of October, appellee recovered a judgment against Webb in the sum of $571.86, and on the same day an execution was issued thereon and placed in the hands of the

sheriff, who, by virtue of the execution, levied on the Chevrolet truck. Pursuant to statute, appellant executed a suspending bond and instituted this suit to have the priority of liens determined."

The Court held that the lien of the Franklin Credit Finance Corporation (execution creditor) was superior to the lien of the Maryland Credit Finance Corporation, which had financed the purchase of the automobile. In this case the Court said: "The statute, in our opinion, is plain and unambiguous. The key sentence in the section is this: 'Said certificate of title, when issued by the division showing a lien or encumbrance, shall be deemed adequate notice to the commonwealth, creditors and purchasers.' It follows, therefore, that when a certificate of title is issued which fails to show a lien or encumbrance, it is notice to the world that the property is free from any lien or encumbrance, and, if transferred to a bona fide purchaser, the latter would obtain a good title. There being no lien of record as required by statute, an execution creditor stands in the same situation as a bona fide purchaser without notice." And Chief Justice Campbell thus concluded the opinion: "It was the intention of the legislature to provide for a simple means for the ascertainment of liens against motor vehicles. Instead of requiring a creditor or purchaser to look for liens against motor vehicles in many places, perhaps, the fact that such liens exist can be established by looking in the one place designated by the statute."

The case of Cohen v. Meador, 119 Va. 429, 89 S.E. 876 (cited by counsel for the bankrupt-trustee), can be disposed of very simply. That case arose under an old statute, had nothing whatever to do with conflicting claims to motors and dealt solely with the duties of a motorist on meeting a horseman or a horse-drawn vehicle, when these latter were quite common on Virginia roads.

Much was made by counsel for the bankrupt-trustee, both in his brief and in his oral argument, of the contention (which finds some support in the Virginia case discussed above) that the Virginia Motor Vehicle Act, even in its recordation provisions, is not to be interpreted as an ordinary recordation act; but that by virtue of the mobility of motor vehicles, this statute is essentially one enacted under the police power of the state and that it

should be construed in this light. We believe that a clear distinction can properly be made between sales of motor vehicles, when title (or ownership or general property) is supposed to pass between the parties to the transaction, and other claims or liens less than title or ownership. It might well be that these recordation provisions are mandatory as to sales of motor vehicles in that they are designed for three very definite purposes: (1) To suppress automobile thefts; (2) to provide the state with a convenient and accessible record of title for tax purposes; (3) to provide a convenient and accessible method of identifying the ownership of an automobile for police purposes in connection with its operation on the highways of the state. These three reasons for attaching hard, deterrent results to any failure to comply with recordation statutes in connection with automobiles, do not exist as to liens or other claims less than title. Normally, one who has beneficial title to an automobile would be the one who would operate it on the highway, would pay the taxes and would be most concerned in preventing a theft of the car. The criminal sanctions under the Virginia Motor Vehicle Act, we think, were enacted primarily with reference to those having complete ownership, or at least beneficial title, as distinguished from security title or any lesser measure of interest in the automobile.

An analytical and verbal exegesis of the recordation provisions of the Virginia statute confirms us in our view that it was not the intention of the law makers to render void as between the parties, unrecorded liens and other claims less than title or ownership. True, Section 17 of the Act, Code § 2154(64), provides that liens or encumbrances placed on motor vehicles by the voluntary act of the owner, after the original issue of title to the owner, *must* be shown on said certificate of title, but the Section continues by requiring the *owner* to furnish the required information to the Division of Motor Vehicles. In Section 2154 (74) (c) of the Virginia Code is this provision: "When such transferee does not drive such motor vehicle, trailer or semi-trailer nor permit such motor vehicle, trailer or semi-trailer to be driven upon the highways, such transferee should not be required to register such motor vehicle, trailer or semi-trailer nor forward the certificate of title to the division." This would seem to em-

phasize that at least some of the police quality of the regulations to the registration provisions dies away when the motor vehicle is not in circulation on the highways.

Again, in Section 17 of the Motor Vehicle Act, Code § 2154(64), we find: "Said certificate of title, when issued by the division showing a lien or encumbrance, shall be *deemed adequate notice* to the Commonwealth, creditors and purchasers that a lien against the motor vehicle exists." The use of the words *"adequate notice"* in this connection and the use of the words "to the Commonwealth, creditors and purchasers" seem to us to be very strong and definite language which, by any fair interpretation, would strongly indicate that this statute is a *notice statute as to third persons* and was not intended to invalidate unrecorded transactions in motor vehicles other than sales as between the immediate parties to that transaction. In Maryland Credit Finance Corporation v. Franklin Credit Finance Corporation, 164 Va. 579, 582, 583, 180 S.E. 408, 409, Chief Justice Campbell referred to this particular provision as the *key sentence* in the (Motor Vehicle Registration) section and said: "When a certificate of title is issued which fails to show a lien or encumbrance, it is *notice to the world* [italics ours] that the property is free from any lien or encumbrance." This use of the *terminology of notice* by the learned Chief Justice lends strong support to our view of the essential nature of the Virginia Registration Statute.

Again, Virginia Code, Section 2154 (74) provides: "The owner of a motor vehicle * * * registered under the foregoing provisions of this act transferring or assigning his title or interest thereto shall endorse an assignment and warranty of title upon the reverse side of the certificate of title of such motor vehicle * * *, with a statement of all liens or encumbrances thereon." This would seem to imply at least the possibility of a lien on a motor vehicle being valid as between the parties.

Again, Virginia Code Section 2154 (64) provides that, after due registration and the issuance of certificate of title: "nor shall recordation of such lien in any other place for any other purpose be required and shall have no effect." Does not the provision that recordation in any other place shall have no effect, again implicitly attribute some force to the assumption that unrecorded liens are valid as between the parties? The same question might be asked in connection with the Virginia Code Section 2154 (65) which provides how the owner may procure and have stamped upon the certificate of title, the release of the lien or encumbrance "shown upon the certificate of title." For the limitation in this provision to liens "shown upon the certificate" seems by negative implication to admit again the possibility that there could be an existing lien valid as between the parties, which is not shown on the certificate of title.

Once more, we find a provision in Virginia Code Section 2154 (64): "Liens shown upon such certificates of title issued by the division pursuant to applications for same, shall have priority over any other liens against such motor vehicle, trailer or semi-trailer, however created and recorded." We believe that this specific provision giving *priority* to the recorded liens over other liens is once more a recognition that such other liens may exist and be valid as between the parties. If a lien be void, it is destitute of legal effect—is, in fact, no lien at all—and it would not be accurate in connection with such a lien to use a term of comparison such as priority.

Accordingly, we are convinced that the claim of the deed-trustee, even under the seemingly strict provisions of the Virginia Motor Vehicle Act, is a valid claim as between the immediate parties thereto, that is, as between Buchanan (the debtor, subsequently adjudged to be bankrupt) and Embrey (the deed-trustee under the deed of trust or chattel mortgage agreement).

This brings us to the second question—whether the claim of the deed-trustee is superior to the claim of the bankrupt-trustee. We think it is.

The bankrupt-trustee is not a bona fide purchaser for value, but stands generally in the shoes of the bankrupt and takes property subject to equities existing against the bankrupt. Wiltshire v. Warburton, 4 Cir., 59 F.2d 611. See also Glenn, Fraudulent Conveyances and Preferences (Rev. Ed.) Section 100 d., and see Hewit v. Berlin Machine Works, 194 U.S. 296, 24 S.Ct. 690, 48 L.Ed. 986; York Manufacturing Co. v. Cassell, 201 U.S. 344, 26 S.Ct. 481, 50 L.Ed. 782; Zartman v. Waterloo First National Bank, 216 U.S. 134, 30 S.Ct. 368, 54 L.Ed. 418; In

re Scruggs, D.C., 205 F. 673, 675. Section 70, sub. c, of the Bankruptcy Act, U.S.C.A. Title 11, Sec. 110, sub. c makes specific and separate provisions as to *two* different situations. As to *property in the possession or under the control of the bankrupt* at the date of bankruptcy, or otherwise coming into the control of the bankruptcy court (the first situation) the bankrupt-trustee is deemed to be vested at the date of bankruptcy with all the rights, remedies and powers, of a *creditor holding a lien* thereon by legal or equitable proceedings. As to *all other property* (the second situation), the trustee shall be deemed to be vested as of the date of bankruptcy with all the rights, remedies and powers of a judgment creditor then holding an execution duly returned unsatisfied.

■ In his opinion, the Trial Judge said: "No demand was made upon the bankrupt by Embrey, Trustee, or the beneficiary, that such possession and control be surrendered; and there was no provision in the deed of trust which gave any such right to the Trustee or beneficiary, or which obligated the bankrupt to do so; nor did said Trustee acquire possession through any legal or foreclosure proceedings. Under such circumstances, the said Embrey, Trustee, acquired and held possession and control of said property under a mere *colorable* claim of right. This being the case, the said property was within contemplation of the Bankruptcy Act in the possession and control of the bankrupt on the date of his bankruptcy, and the Trustee in Bankruptcy is deemed vested as of that date with the rights of a creditor holding a lien thereon by legal or equitable proceedings." We are quite unable to agree with the learned Trial Judge here. True it is that the deed of trust made no specific provision as to the taking of possession of the motor vehicles; but the deed of trust did provide for a sale of the property by the Trustee when he was required so to do by the holder of the debt, while elaborate and detailed provisions were contained in the deed of trust as to the place, manner and terms of sale. There was not a scintilla of evidence in the record to show that either Janney, the creditor, or Embrey, the deed trustee, had even the slightest suspicion that the debtor, Buchanan, was contemplating bankruptcy, and the record is equally barren of evidence that would tend to show any

fraud, trickery or misrepresentation used by either Janney or the deed-trustee to induce Buchanan to turn over the automobiles to the deed-trustee. It might be noted here, too, that the deed of trust was recorded on the date of its execution, in the Clerk's Office of the Corporation Court of Fredericksburg; and though such recordation may be ineffective under the Virginia Motor Vehicles Act, it certainly shows that there was no attempt made by the parties to create a secret lien on the motor vehicles in question, and there is no question raised in this case of an illegal preference.

In this connection, attention should be called to paragraph 10 of the agreed statement of facts on which this case was tried in the lower court, which reads in part as follows: "That in April, 1939, Respondent S. M. Janney ordered the Trustee to foreclose the Deed of Trust, or chattel mortgage, and the Trustee, Alvin T. Embrey, took up the matter with Mr. Buchanan, who voluntarily surrendered the property with possession and control thereof to the Trust-Trustee on the 22nd. day of April, 1939. The Trust-Trustee had previously arranged with Virginia Sales & Service Corporation, of Fredericksburg, Virginia, to receive said property, other than the wreck truck body, and hold the same subject to the order of the Trust-Trustee, and the Trust-Trustee made an agreement with Virginia Sales & Service Corporation to store the said property at $5.00 per month for each the Sedan car and the Ford truck."

Even without a provision in the deed of trust giving the deed-trustee the right to take possession of the property prior to a sale, such taking of possession is quite common in order that the deed-trustee may exhibit the property to intending purchasers, so that an adequate price might be realized at a future sale, and that the trustee may have the property before him at the sale and may deliver it to the purchaser. Under the circumstances of this case, we see nothing *colorable* in such taking of possession by the deed-trustee. Paragraph 10 of the agreed statement of facts, set out above, indicates that the creditor, Janney, ordered the trustee to foreclose the deed of trust or chattel mortgage, that the deed-trustee took up this matter with the debtor, Buchanan "who voluntarily surrendered the property with possession and control thereof to the trus-

tee on the 22nd. day of April, 1939." This paragraph of the agreed statement of facts shows that the deed-trustee deposited the motor vehicles with a third party under an agreement by which said third party held the property subject to the directions, and at the expense, of the deed-trustee. It seems fair to assume that the debtor, Buchanan, never expected to assert any other right in the motor vehicles in question beyond that of the right to the possible surplus, in case the price realized at the sale should exceed the unpaid portion of his debt. We, accordingly, hold that the motor vehicles in question were not in the possession or control of the bankrupt or otherwise in the control of the bankruptcy court at the date of bankruptcy (see Wilson v. Merchants' Loan etc. Co., 183 U.S. 121, 128, 22 S.Ct. 55, 46 L.Ed. 113); and we hold that the bankrupt-trustee was not vested with the rights and powers of a creditor holding a lien on the property by legal or equitable proceedings.

It follows, then, that the bankrupt-trustee was vested with, and only with, the rights and powers of a judgment creditor then holding an execution duly returned unsatisfied. If this be true, then, under the applicable Virginia law, the bankrupt-trustee had no lien whatever on the motor vehicles in question. See Wiltshire v. Warburton, 4 Cir., 59 F.2d 611, and see also the rather elaborate opinion of Judge Parker in Southern Dairies v. V. Banks, 4 Cir., 92 F.2d 282, 285. Since the deed-trustee had (as we have indicated above) acquired lawful possession and control of the property prior to the bankruptcy, the deed-trustee is then virtually in the position of a pledgee. See Glenn, Fraudulent Conveyances and Preferences, Rev. Ed., Section 499. See, also, 24 Va.L. Rev. 355, 361, 372; Childers v. Judson Mills Co., 189 S.C. 224, 200 S.E. 770. It would then seem clear that a mere judgment creditor, with an execution returned unsatisfied, who has no lien, cannot properly attack the lien of a deed-trustee in possession of the mortgaged property. In registration statutes in general, the word "creditors" ordinarily means creditors having a lien. See Dulaney v. Willis, 95 Va. 606, 29 S.E. 324, 64 Am.St.Rep. 815; Capitol Motor Co. v. Lasker, 138 Va. 630, 123 S.E. 376; Cummer v. Hudson, 141 Va. 271, 127 S.E. 171; Hartford Accident & Indemnity Co. v. Coggin, 4 Cir., 78 F.2d 471; Firestone Tire & Rubber Co. v. Cross, 4 Cir., 17 F.2d 417; Holt v. Henley, 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767. See particularly the dissenting opinion of Judge Waddill in Oppenheimer v. Finance & Guaranty Co., 4 Cir., 5 F.2d 486, 487, 488, which was expressly approved by the United States Supreme Court, 276 U.S. 10, 11, 48 S.Ct. 209, 72 L.Ed. 443.

To summarize, since the bankrupt-trustee here stands in the shoes of a judgment creditor with an execution returned unsatisfied, and since such a judgment creditor has no lien on any specific property, it must follow that the claim of the bankrupt-trustee to the motor vehicles in question cannot prevail against the claim of the deed-trustee who had previously acquired both possession of, and a lien on, the motor vehicles in question, with the added rights as to those motor vehicles of a pledgee.

In the light of what has been said, the judgment of the District Court in favor of the bankrupt-trustee is reversed and the case is remanded to the District Court with directions to enter judgment in favor of the deed-trustee, Embrey, the appellant in this case.

Reversed.