**In re James Ralph WUERZBERGER, Debtor.**

**The Bank of New York, Trustee of the Oakwood Acceptance Corporation REMIC Trust 1994–1, Plaintiff,**

v.

**John G. Leake, Chapter 7 Trustee, Defendant.**

**Bankruptcy No. 5–01–00232. Adversary No. 5–02–00005A.**

United States Bankruptcy Court, W.D. Virginia, Harrisonburg Division.

July 31, 2002.

J. Forester Taylor, Staunton, VA, for debtor.

John G. Leake, Harrisonburg, VA, trustee.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

This matter arises in the context of an adversary proceeding filed in the above-captioned Chapter 7 bankruptcy case. The Bank of New York (hereinafter "Bank") moves this court to grant partial summary judgment declaring that as of the date that James Ralph Wuerzberger (hereinafter "Debtor") filed his bankruptcy petition the Bank held a valid, enforceable, properly executed and unavoidable security interest in and lien on the Debtor's manufactured home superior to that hypothetical judicial lien in favor of a Chapter 7 trustee, pursuant to 11 U.S.C. § 544(a)(1).[1] The court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 & 1334. The

---

1. Section 544(a) provides for the trustee's hypothetical judicial lien as follows:

   The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

court has considered all the arguments of the parties and for the reasons stated hereafter the Bank's motion will be granted.

## I. BACKGROUND

The Debtor executed a retail installment contract with Oakwood Mobile Homes, Inc. (hereinafter "Oakwood") for the purchase of a manufactured home. The contract granted Oakwood a security interest in the manufactured home as collateral for the indebtedness created by the retail installment contract. Oakwood assigned the retail installment contract to an affiliate, Oakwood Acceptance Corporation, L.L.C., f/k/a Oakwood Acceptance Corporation (hereinafter "Oakwood Acceptance").

Oakwood Acceptance perfected its security interest in the manufactured home by noting the lien on the manufactured home's certificate of title. Pursuant to a pooling and servicing agreement dated July 1, 1994, Oakwood Acceptance transferred all of its rights, title, and interest in the retail installment contract to Oakwood Acceptance Corporation REMIC Trust 1994–1 (hereinafter "Trust").[2] The pooling and servicing agreement provides that Oakwood Acceptance act as the servicing agent with respect to the retail installment contract. As agent, Oakwood Acceptance must collect amounts due under the retail installment contract and otherwise enforce the terms of the retail installment contract. Oakwood Acceptance retains custody of the retail installment contract on behalf of the Trust.

Oakwood Acceptance admits that it transferred all of its interest in the retail installment contract to the Trust. It is also undisputed that neither Oakwood Acceptance nor the trustee of the Trust amended the certificate of title to substitute the name of the Trust in place of Oakwood Acceptance as the lienholder.

On February 14, 2001, the Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. The Debtor scheduled a debt owed to Oakwood Acceptance in the amount of $19,215.02, secured by an Oakwood manufactured home. On April 9, 2001, John G. Leake, the bankruptcy trustee (hereinafter "Trustee"), commenced an adversary proceeding to determine the validity of Oakwood's lien.[3] The Trustee alleged that Oakwood Acceptance assigned its interest in the retail installment contract and lien to a securitization trust, asserted that Oakwood Acceptance's interest in the lien was extinguished, and that the Trustee had a first lien on the manufactured home under the statutory strong arm powers granted a trustee in bankruptcy by § 544 of the United States Bankruptcy Code. The court held that the undisputed assignment to the Trust by Oakwood Acceptance of all of its interest in the retail installment contract extinguished Oakwood Acceptance's lien interest in the manufactured home. *See In re Wuerzberger,* 271 B.R. 778 (Bankr. W.D.Va.2002).

On January 29, 2002, the Bank filed this adversary proceeding seeking a declaratory judgment and permanent injunctive relief. On April 2, 2001, the Bank filed a motion for partial summary judgment seeking a declaratory judgment that the Trust held a valid, enforceable, and properly perfected security interest in the Debtor's manufactured home as of the petition date that is superior to the Trustee's

---

2. The Bank is the current trustee for the Trust.

3. *Leake v. Oakwood Acceptance Corporation (In re Wuerzberger),* 271 B.R. 778 (Bankr. W.D.Va.2002).

hypothetical judicial lien.[4] The Bank contends that it maintained a perfected security interest in the manufactured home even though the certificate of title was not amended to note it as the lienholder as a result of the continued notation of Oakwood Acceptance as the lienholder on the title. The bankruptcy trustee contends that under Virginia law the only way to possess a perfected security interest in a manufactured home is by noting the actual lienholder's name on the certificate of title.

## II. ISSUE

The issue before the court is whether the Bank has a perfected security interest in the manufactured home superior to the Trustee by virtue of having the name of its assignor reflected on the certificate of title as the lienholder.

## III. STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant satisfies this burden, the non-moving party must come forward with specific facts showing that evidence exists to support its claims and that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. The non-moving party may not rest on its pleadings to make this showing. *Id.* When deciding a motion for summary

judgment, all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Estate of Kimmell Through Kimmell v. Seven Up Bottling Co. of Elkton, Inc.*, 993 F.2d 410, 412 (4th Cir.1993). The parties agree that the purely legal issue before the court is whether under Virginia law, the Bank has a perfected security interest in the manufactured home.

## IV. DISCUSSION

A trustee in bankruptcy stands as a hypothetical judgment lien creditor effective on the date a Debtor files a bankruptcy petition. Thus, a bankruptcy trustee is entitled to priority over unperfected liens. *See* 11 U.S.C. § 544(a)(1). In the case at bar, the Bank's ability to prevail rests solely on its position that having its assignor's name remain on the certificate of title is sufficient under Virginia law to maintain, after the filing of the bankruptcy petition, the first lien position of the previously perfected security interest of its assignor.

The parties do not dispute that Oakwood Acceptance properly perfected its security interest in the manufactured home and that no new security interest or lien was created by the assignment to the Trust. It is also undisputed that Oakwood Acceptance would be a source of information as to the lien noted on the title.

The bankruptcy trustee asserts that Virginia law requires that the actual lienholder's name be shown on the certificate of title in order for perfection to continue post-petition and defeat his judicial lien claim. His argument rests on the theory that Virginia is a "strict titling" state and that the language of the statute requires

---

**4.** This motion is filed pursuant to Federal Rules of Civil Procedure Rule 56 which is

made applicable here by Bankruptcy Rule 7056.

the notation of the Bank's name on the title. The Bank's position is that it is sufficient under Virginia law that the name of the Bank's assignor is on the title. The Bank's position is grounded on the theory that Virginia titling law is designed to provide notice so that parties who may be affected are put on inquiry notice as to the status of title and liens on the title. The Bank bolsters its position by pointing to the fact that the assignor, Oakwood Acceptance, has information about the lien noted on the title which Oakwood Acceptance could provide to those who inquire about the title and that this ability satisfies the intent of the statute and removes the necessity of requiring an assignee to record its name on each title assigned to continue perfection post assignment. To support the logic of its position, the Bank points to provisions of the Virginia Uniform Commercial Code which, while not applicable to the property at issue here, do not require an assignee to file any financing statements in order to continue perfection post assignment.

The court finds the Trustee's interpretation of the applicable law flawed. Further, the court believes that a Virginia court interpreting the titling statutes would hold that Virginia law does not require an assignee to amend a certificate of title as a condition of maintaining perfection. Moreover, as applied to the facts here, the policies and purposes of the titling statutes are served even though the Bank failed to amend the certificate of title to state its name in substitution of the name of Oakwood Acceptance, its assignor.

Perfection of a security interest in the Debtor's manufactured home is governed by Virginia titling statutes.[5] Virginia Code § 46.2–604 requires that the certifi-

cate of title contain "a statement ... of all liens or encumbrances on the motor vehicle." Section 46.2–636 of the Virginia Code states:

> When the Department receives an application for a certificate of title to a motor vehicle, trailer, or semitrailer showing security interests on the motor vehicle, trailer, or semitrailer, the certificate of title issued by the Department to the owner of the vehicle shall show all security interests disclosed by the application. All security interests shown on the certificate of title shall be shown in the order of their priority according to the information contained in the application.

When "a security interest" is reflected on the certificate of title, Va.Code § 46.2–638 provides that the certificate of title is "adequate notice ... that a security interest in the motor vehicle exists."

The Supreme Court of Virginia describes the purpose of Virginia titling statutes as follows:

> The motor vehicle titling statutes, Title 42, Chapter 6, were enacted to protect the public by providing for the issuance of certificates of title as evidence of ownership of motor vehicles and to provide potential buyers and creditors with a single place where information about the status of motor vehicles could be found. *Maryland Credit Fin. Corp. v. Franklin Credit Fin. Corp.*, 164 Va. 579, 583, 180 S.E. 408, 409–10 (1935). These statutes, originally enacted in 1924, eliminated any requirement that a lien against a motor vehicle be recorded in the county or city where the purchaser or debtor resides or in any other manner available for recording a security

---

**5.** *See* Va.Code § 8.9–302. Subsection (1)(d) states that perfection of a security interest in a motor vehicle is not accomplished by filing a financing statement, instead a "notation on the certificate of title is required for a motor vehicle or watercraft required to be titled".

interest in personal property, but imposed the new condition that a security interest in a motor vehicle would not be perfected "as to third parties" unless shown on the certificate of title.

Code § 46.2–638; *Bain v. Commonwealth*, 215 Va. 89, 91, 205 S.E.2d 641, 643 (1974). Code § 46.2–638 specifically provides that a certificate of title showing a security interest "shall be adequate notice to the Commonwealth, creditors, and purchasers that a security interest in the motor vehicle exists."[6] We have recognized that the converse is also true. [W]hen a certificate of title is issued which fails to show a lien or encumbrance, it is notice to the world that the property is free from any lien or encumbrance, and if transferred to a bona fide purchaser the latter would obtain a good title. *Maryland Credit*, 164 Va. at 582–83, 180 S.E. at 409. To hold otherwise would eliminate the ability of potential buyers and lenders to rely on the information contained in certificates of title.

*Toyota Motor Credit Corp. v. C.L. Hyman Auto Wholesale, Inc.*, 256 Va. 243, 246, 506 S.E.2d 14, 15 (1998).

In analyzing the Bank's position, it is clear that the certificate of title contains only a statement showing the lien of Oakwood Acceptance, its assignor. Since there is no indication on the certificate of title that the Bank is the holder of a lien on the manufactured home, there is a colorable argument that a plain and narrow reading of Virginia Code § 46.2–636 does not aid the "conduit" theory which the Bank advocates.[7] The strength of the Bank's argument, however, is found in

§ 46.2–638 and confirmed by the *Toyota Motor* case quoted above, when coupled with the specific undisputed fact in this case that Oakwood Acceptance as both assignor and agent of the Bank can provide information to those on inquiry about the status of the lien represented by its name on the title. Also, § 46.2–638 merely recites "that a security interest in the motor vehicle exists." It does not specifically require that the current existing lienholder's name be shown on the title.

In support of its contention that the Bank does not have a security interest in the manufactured home because its name is not noted on the certificate of title, the bankruptcy trustee relies on *Richlands Nat'l Bank v. Smith*, 34 B.R. 749 (W.D.Va. 1983); *In re Spring Grove Transport, Inc.*, 202 B.R. 862 (Bankr.E.D.Va.1996); and *In re Darrington*, 251 B.R. 808 (Bankr. E.D.Va.1999). In each case, the court held that a lienholder was unperfected because its lien was not noted on the certificate of title prior to the date the various debtors filed bankruptcy.

In *Richlands Nat'l Bank*, the debtors purchased two vehicles from an automobile dealer. In connection with the purchase, the debtors executed installment sale security agreements to the dealer. The dealer assigned its right, title, and interest in the security agreements and notes to a bank. The security agreements were noted on the back of the vehicle's certificates of origin. The debtors, however, filed a petition in bankruptcy before the certificates of origin were submitted to the DMV; therefore, as of the petition date, no certificates of title had been issued which reflected the bank's lien. The court held

---

6. In pertinent part, Va.Code § 46.2–638 states "[a] certificate of title, when issued by the Department showing a security interest, shall be adequate notice to the Commonwealth, creditors, and purchasers that a security interest in the motor vehicle exists . . . ."

7. The Bank admits that Oakwood Acceptance is not a lienholder.

that the bank did not have a perfected security interest because no security interests were noted on the certificates of title prior to the commencement of the debtors' bankruptcy case. In the case here, unlike the facts in *Richlands Nat'l Bank,* a certificate of title with a lien noted thereon existed prior to the petition date.

In *Spring Grove Transport,* I.T.T. assigned its perfected security interests in six Kenworth T–600 tractors to G.E. Capital. By power of attorney from I.T.T., G.E. Capital obtained a release of I.T.T.'s liens on the vehicles. G.E. Capital, however, did not file applications with the DMV for new certificates of title for nearly one month. During the interim, when the certificates of title indicated only that I.T.T.'s liens had been released, the debtor filed bankruptcy. The court held that since the certificates of title were devoid of any existing liens as of the petition date and only reflected released liens, the bankruptcy trustee's hypothetical judicial lien had priority pursuant to 11 U.S.C. § 544. Unlike the notice of an extant lien provided by the certificate of title in the instant case, the certificates of title in *Spring Grove Transport* gave notice only that liens had been released. No further inquiry was needed in *Spring Grove,* even though inquiry of I.T.T. by the bankruptcy trustee may have yielded the "truth" about the status of the liens.

In *Darrington,* the court concluded that Chrysler's security interest in a vehicle was not perfected because its lien was not reflected on the certificate of title. Chrysler applied for a duplicate certificate of title; however, the Department of Motor Vehicles improperly listed Crestar Bank as the lienholder. For two years Chrysler did nothing to rectify this patent error. The court stated the purpose of the Virginia titling statutes is to provide a uniform and simple source of notice to third parties regarding the existence of a security interest. Holding that Chrysler had an unperfected security interest, the court stated "if a hypothetical lien creditor or purchaser had attempted to ascertain the secured interest in the vehicle, they would likely have been informed by Crestar that it did not hold a security interest. Chrysler's security interest would not have been apparent nor easily ascertainable ... [and] any potential bona fide purchaser or creditor would have had to resort to further investigation of the title ...."

*Darrington* is the most factually similar of the three cases cited by the bankruptcy trustee to the present case. However, the court finds that the analysis of Judge Tice supplies the points of distinction. The court in *Darrington* remarked that a third party would not uncover any indication of an existing lien based on the notice provided by the certificate of title. There was no apparent or contractual relationship between Crestar Bank and Chrysler. Crestar Bank would have no information to provide to inquiring parties.

Here, on the other hand, Oakwood Acceptance supplied the court with documentation regarding its relationship to the Trust. If third parties contacted Oakwood Acceptance, they would be given lien information. The relationship between Oakwood Acceptance and the Trust is contractual and purposeful, not non-existent and born of mistake like Chrysler and Crestar Bank's in *Darrington.*

*In re Webb,* 106 B.R. 517, 521 (Bankr. E.D.Tenn.1989) is nearly identical to *Darrington.* In *Webb,* an auto dealer inadvertently listed on the application for certificate of title the Bank of East Tennessee as the lienholder instead of First American National Bank. The Bank of East Tennessee was never a party to the transaction and never held an interest in the vehicle. Holding that First American National

Bank had an unperfected security interest, the court analogized the mistake in the notation of the lienholder's name on the certificate of title to a mistake made in a financing statement and concluded that the error was not a minor mistake: a search would not likely uncover the true lienholder. The court further addressed the notice provided by the certificate of title and stated that "an inquiry made to one who has no connection to the debtor or to the secured party relative to the security interest in question could not be expected to result in a discovery of the actual secured creditor's lien." In the case before this court for decision the notice provided by the certificate of title would have led to the actual secured creditor's lien.

*In re Field,* 263 B.R. 323 (Bankr.D.Idaho 2001) provides guidance from another jurisdiction where titling statutes are virtually the same. The debtors in *Field* granted a security interest in a trailer to a bank. The bank properly perfected its security interest in the trailer by noting its lien on the certificate of title, as required by Idaho Motor Vehicles Titles Act, Idaho Code §§ 28–9–302 & 49–510.[8] The bank subsequently assigned all of its interests in the trailer to another entity. The assignee did not amend the certificate of title to reflect it as the lienholder. Some time after the bank assigned its security interest, the debtors filed bankruptcy.

The *Field* court framed the issue as whether "an assignee of a properly perfected security interest must have a new title certificate issued noting the assignee's lien in order to prevail against a bankruptcy trustee." The court held that the Idaho Motor Vehicle Titles Act did not require an assignee to obtain a new certificate of title or to note the assignment on the certificate of title as a condition of maintaining perfection. The court recognized that no new lien or encumbrance was created by the assignment and that assignees stand in the shoes of their assignors. The court also noted that Idaho's Motor Vehicle Titles Act does not specifically require an assignee to amend the certificate of title and that the notice function of the perfection provisions was served even though the assignee did not have a new certificate of title issued. In fact, the court stated "[u]pon investigation by a potential creditor or purchaser of a vehicle, the information should be available that the original secured party has assigned its interest." *Id.* at 330. Since amendments to financing statements after an assignment are not necessary under Idaho's Uniform Commercial Code, the court was unwilling to require one for titled vehicles absent clear legislative guidance requiring such. *See also In re Hergert,* 275 B.R. 58 (Bankr.D.Idaho 2002) (holding that an entity, which acquired through a merger a security interest in a manufactured home, did not need to amend the certificate of title to reflect its name as the lienholder as a condition of perfection).

The bankruptcy trustee's argument that Virginia is a strict title state is not subject to dispute. Indeed, Title 46 of the Virginia Code contains many requirements that must be strictly complied with to validate transactions involving motor vehicles. For example, in *Rawl's Auto Auction Sales, Inc. v. Dick Herriman Ford, Inc.,* 690 F.2d 422 (4th Cir.1982), the court held that the failure to transfer certificates of title precluded the transfer of ownership to vehicles between the parties. Courts in Vir-

---

**8.** In pertinent part Idaho Code § 49–510(1) states that "[t]he title shall contain the name and address of each holder of a lien or encumbrance... [and] all liens and encumbrances so filed shall be perfected and take priority according to the order in which the same are noted upon the certificate of title."

ginia recognize that "Virginia has been viewed as a strict title state with respect to the passage of ownership interests in automobiles." *Id.* at 427. *GMAC v. Smith*, 377 F.2d 271, 274 (4th Cir.1967) (stating "failure to comply with a 'mandatory' requirement of the Virginia statutes providing for transfer of automobile titles will prevent the passage not only of legal title but of any interest upon which a lien may be perfected").

That courts interpreting Virginia law have required strict compliance to statutory provisions to transfer ownership interests does not necessarily mean that the code sections in question here require an assignee to amend a certificate of title to reflect its name as the lienholder. Noticeably absent from the many detailed provisions of Title 46 are specific requirements that an assignee of a perfected security interest must satisfy to maintain perfection of a previously perfected and unchanged security interest.

By analogy the court notes that under Article 9, the assignee of a perfected security interest is not required to take action in order to maintain the perfected status of the security interest, so long as no new security interest was being created through the assignment. Virginia Code § 8.9–302(2) states "[i]f the secured party assigns a perfected security interest, no filing under this title is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor". Revised Article Nine contains the same principle. "If a secured party assigns a perfected security interest or agricultural lien, a filing under this title is not required to continue the perfected status of the security interest against creditors of and transferees from the original debtor." Va.Code § 8.9A–310(c).

This principle is entirely consistent with the notice policy of the UCC. *See In re Varney Wood Prods., Inc.*, 327 F.Supp. 425 (W.D.Va.1971) (discussing notice purpose served by required filing). If the assignor properly perfected its security interest and a third party undertakes a search of the debtor's property, the third party will discover the assignor's (former) interest and will be on inquiry notice of the assignee's interest as well. *See Went v. Rhoden Nissan/Auto Fin. Ctr. (In re Went)*, 179 B.R. 889, 892 (Bankr.D.Neb. 1995).

Indicative of the breadth of this notice policy are the official comments to Revised Article Nine, which state that

> [s]ubsection (c) applies not only to an assignment of a security interest perfected by filing but also to an assignment of a security interest perfected by a method other than by filing, such as by control or by possession .... Similarly, subsection (c) applies to the assignment of a security interest perfected by compliance with a statute, regulation, or treaty under Section 9–311(b), such as a certificate-of-title statute. Unless the statute expressly provides to the contrary, the security interest will remain perfected against creditors of and transferees from the original debtor, even if the assignee takes no action to cause the certificate of title to reflect the assignment or to cause its name to appear on the certificate of title. See PEB Commentary No. 12, which discusses this issue under former Section 9–302(3). Compliance with the statute is "equivalent to filing" under Section 9–311(b).

Va.Code § 8.9A–310 (official comment).

PEB Commentary No. 12 discusses at length the intended harmonious interaction between § 9–302(2) and certificate of title statutes regarding the perfection of security interests. The commentary states that

"to the extent that § 9–302(2) and the certificate of title statutes can be construed as consistent with each other, the Code's underlying purpose and policy of making 'uniform the law among the various jurisdictions' ... will, of course, be better served." The commentary further states "a strict and literal construction of a certificate of title statute should be avoided if it produces a result that unnecessarily conflicts with the Uniform Commercial Code .... [C]ourts have refused to apply a highly refined and technical interpretation to a certificate of title statute to defeat the perfection of a security interest." U.C.C. Reporting Service, PEB Commentary on the Uniform Commercial Code, Commentary No. 12, § 9–302 (Feb. 10, 1994) (citing *Janney v. Bell,* 111 F.2d 103 (4th Cir.1940); *In re Littlejohn,* 519 F.2d 356, 358 (10th Cir.1975) ("[T]he certificate of title statutes, when applied as lien perfection statutes, should be construed in harmony with the general U.C.C. scheme for perfection of security interests.")).

The court is convinced that the official comment to Va.Code § 8.9A–310(c) and the reference to the PEB Commentary therein indicate that the General Assembly did not intend to immure in Title 46 anomalous perfection requirements that are discordant with the perfection requirements of the UCC. To the contrary, the statement in the official comment that "[u]nless the statute expressly provides to the contrary, the security interest will remain perfected against creditors of and transferees from the original debtor, even if the assignee takes no action to cause the certificate of title to reflect the assignment or to cause its name to appear on the certificate of title" strongly supports the Bank's position that the General Assembly intended that an assignee of a perfected security interest in a motor vehicle does not need to amend the certificate of title as a condition of maintaining perfection.

The statement that a "security interest will remain perfected ... even if the assignee takes no action to cause the certificate of title to reflect the assignment or to cause its name to appear on the certificate of title" is evidence both that the principle announced in § 8.9A–310(c) should apply to perfection of security interests in motor vehicles and that Title 46 does not "expressly provide to the contrary." If Title 46 clearly excepted itself from the principle embodied in § 8.9A–310(c), then the reference in the official comment to an assignee of a perfected security interest in a motor vehicle is nothing more than an inexplicable exercise in obfuscation. This court is not inclined to believe that the General Assembly acts with such an untoward purpose. Finally, it is not logical to suppose that the interplay between § 8.9–302(2) and Title 46 should yield a different result than that obtained under Revised Article Nine. Virginia Code § 8.9–302(2) contains the same principle as § 8.9A–310(c). In this sense, § 8.9–302 aids the court in properly interpreting Title 46.

No where in Title 46 is there a requirement that the assignee of a lien reflected on the certificate of title amend the certificate of title to bear its name as the lienholder. Simply because assignees may amend certificates of title to bear their names does not mean that they must amend in order to maintain the perfected status of assigned security interests. If the Generally Assembly wanted to create such a requirement, it certainly could have explicitly stated its intentions in the text of Title 46. The bankruptcy trustee would essentially have this court read that requirement into a comprehensive and detailed statute where it is not presently found.

█ Furthermore, the Fourth Circuit hinted that the strict nature of Virginia

titling statutes may not apply with the same force in the lien context. Judge Dobie, speaking for the Fourth Circuit Court of Appeals stated:

> We believe a clear distinction can properly be made between sales of motor vehicles when title (or ownership or general property) is supposed to pass between the parties to the transaction, and other claims or liens less than title or ownership. It might well be that these recordation provisions are mandatory as to sales of motor vehicles in that they are designed for three definite purposes: (1) to suppress automobile thefts; (2) to provide the state with a convenient record for tax purposes; (3) to provide a convenient and accessible method of identifying the ownership of an automobile for police purposes in connection with operation of the highways of the state. These three reasons for attaching hard deterrent results to any failure to comply with recordation statutes in connection with automobiles do not exist as to liens or other claims less than title.

*Janney v. Bell,* 111 F.2d 103, 107 (4th Cir.1940) *quoted in GMAC v. Smith,* 377 F.2d at 274.[9] As one court opined, "[u]nless the legislature has plainly insisted on a technical prerequisite to the perfection of a security interest, courts should be slow to recognize such procedural obstacles." *In re Load–It, Inc.,* 860 F.2d 393, 396 (11th Cir.1988).

■ The court also recognizes that "an assignee stands in the shoes of the assignor, and acquires all of the assignor's rights and liabilities in the assignment." *Union Recovery Ltd. Partnership v. Horton,* 252 Va. 418, 423, 477 S.E.2d 521 (1996). The application of this common law principle also diminishes the need to amend the certificate of title in this case. Since no new lien was created, the assignee would stand in the shoes of its assignor and hold a perfected security interest.

Additionally, it cannot be said that the bankruptcy trustee or any creditors were mislead by the conduct of the Bank or Oakwood Acceptance. Nor can it be said that Oakwood Acceptance and the Bank attempted to create a secret lien. To require the Bank to amend the certificate of title would serve no useful purpose since no materially different information would be conveyed by the certificate of title. Third parties would still be on notice that an interest is claimed in the manufactured home. Also, on the undisputed facts of this case, Oakwood would provide the necessary conduit to lead an examiner to the owner of the security interest noted on the certificate of title.

■ This court previously interpreted Virginia law and held that the primary function of noting liens on certificates of title is to put third parties on inquiry notice. *In re Wuerzberger,* 271 B.R. 778, 783–84 (Bankr.W.D.Va.2002) (citing *Bain v. Commonwealth,* 215 Va. 89, 91, 205 S.E.2d 641, 643 (1974) (stating that "the purpose of this statute is to provide a simple means for third party purchasers or creditors to ascertain the existence of a prior security interest") and *C.I.T. Corp. v. Guy,* 170 Va. 16, 25, 195 S.E. 659, 662 (1938) (stating certificates of title give notice to creditors and purchasers)). Liens noted on certificates of title are not proof positive of the true and exact nature of the interests claimed in the property; rather

---

9. Section 17 of the Motor Vehicle Act, Code § 2154(64) & (74) were applicable when *Janney v. Bell* was decided. Section 2154(64), for example, states that "said certificate of title when issued by the division showing a lien or encumbrance, shall be deemed adequate notice to the Commonwealth, creditors and purchasers that a lien against the motor vehicle exists." *See Janney,* 111 F.2d at 108.

the notations provide a simple and localized warning to others that an interest is claimed in the property and that with further investigation the exact nature of that interest may be ascertained.

## CONCLUSION

Virginia's titling statutes do not explicitly require the assignee of a properly perfected security interest to amend the certificate of title to reflect its name as a condition of perfection. The statute only requires that the certificate of title show security· interests in the motor vehicle shown on the application. Since no new liens were created by the assignment the labor of amending the certificate of title to bear the name of an assignee produces no meaningful utility. Whether the certificate of title is amended or not, the world is on notice that an interest is claimed in the manufactured home and interested parties can readily ascertain the nature of the lien from Oakwood Acceptance, the assignor and servicer of the retail installment contract. Furthermore, under Article Nine of the UCC in Virginia, an assignee does not need to refile to maintain its perfected status. It would disserve notions of uniformity to require otherwise for titled vehicles and the General Assembly has not expressly indicated that such a result is required by Title 46. Accordingly, it is

## ORDERED:

That as of the date of the filing of the Debtor's Chapter 7 petition, the Trust held a valid, enforceable, and properly perfected security interest in the Debtor's manufactured home that is superior to the Chapter 7 trustee's § 544(a)(1) hypothetical judicial lien and, to that extent, the Bank of New York's motion for partial summary judgment is GRANTED.